CERNOHORSKY, Plaintiff, vs. NORTHERN LIQUID GAS COMPANY, Defendant and Respondent: PURE OIL COMPANY, Interpleaded Defendant and Appellant. [Three cases.]

*January 10—February 8, 1955.*

For the appellant there were briefs by *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *Theron P. Pray*.

For the respondent there was a brief by *Hughes, Anderson & Davis* of Superior, and oral argument by *John L. Davis*.

STEINLE, J. From the pleadings it appears that the defendant, Northern Liquid Gas Company, is engaged in the business of selling liquefied petroleum gas, installing equipment, regulators, containers, and pipe lines. It delivers liquefied gas from its trucks to consumers' containers. The impleaded defendant, Pure Oil Company, manufactures and processes liquid gas.

In the Cernohorsky amended complaint, which is similar to the others, it is alleged in part:

"That Joseph Cerny owns and operates a resort business in the town of Barnes, . . . that among other things on said

premises is a well . . . ; that said well includes a water tank, an electric motor . . . and a pump, all of which are located in the well pit, . . . That . . . in the forenoon of the 13th day of June, 1953, plaintiff, while in the employ of the said owner, was engaged with one George Martin, a plumber, also employed by said owner, in the repair of said pump; that at no time did this plaintiff, or any of the others present, note any odor of gas of any kind; that in the course of said repair work . . . it became necessary for the said George Martin to strike a match . . . ; that immediately upon the striking and ignition of said match an enormous explosion occurred. . . .

"That . . . defendant [Northern] . . . sold propane gas to said owner [Cerny], and delivered the same into the tank of said owner, and at the time of delivery, . . . the defendant . . . was employed by said owner to install and check all necessary . . . equipment . . . from the source tank to the said residence and cabins of the owner; that . . . defendant . . . did on the 10th day of June, 1953, represent to the owner, . . . that . . . the entire gas system was properly installed and in order and safely ready for use.

"That . . . a leak in said gas line existed . . . ; that the gas line at the point of leakage was . . . laid in sandy soil of such a nature as to permit said leaking gas to filtrate into the well pit, . . . where the same exploded upon the ignition of said match.

"That as the result of said explosion and fire the plaintiff suffered severe burns . . . all to his damage in the sum of . . . .

"That the . . . injuries to the plaintiff were caused by the negligence of the defendant [Northern] in the following respects, to wit:

"(a) in its approval of the installation of the pipe line and connections . . . ;

"(b) in failing to examine said connection to check and determine whether the same was securely tightened so as to prevent escape of said propane gas; and representing thereby the same was secure and free from hazard;

"(c) in failing to employ . . . proper and available devices to determine whether said propane gas was properly held in said tank . . . ;

"(d) in approving said installation and furnishing said propane gas . . . in violation of the laws of the state of Wisconsin and the regulations of the industrial commission . . . ;

"(e) in bringing upon and leaving upon said premises the afore-mentioned highly dangerous commodity so negligently as to allow the escape of same. . . ."

In its answer to the amended complaint Northern Liquid Gas Company denies the various allegations of the complaint as set forth above. In the amended cross complaint it is alleged in part:

"That the said Northern Liquid Gas Company, . . . denies that it supplied said liquefied gas without the proper application of an odorizing agent of sufficient strength to give warning of an improper escape of gas, but in the alternative, this defendant, Northern Liquid Gas Company, alleges that the defendant, Pure Oil Company, . . . did negligently and carelessly furnish liquefied gas to the Northern Liquid Gas Company, . . . which liquefied gas in turn was furnished to the said Joseph Cerny without the proper application of an odorizing agent of sufficient strength to give warning of an improper escape of gas.

"That if the defendant, Northern Liquid Gas Company, be held liable to the plaintiff for injury and damage sustained by him as a result of said explosion, that the said defendant, Northern Liquid Gas Company, will have a right of contribution, as against the impleaded defendant, Pure Oil Company, a foreign corporation."

The affidavit in support of the motion for summary judgment is as follows:

"Gerald W. Sanders, . . . says that he is . . . an assistant vice-president of the Pure Oil Company . . . ; that attached to this affidavit and incorporated herein by this reference is a photostatic copy of the sales agreement entered into. between Northern Liquid Gas Company [and the Pure Oil Company], dated March 25, 1953, and a photostatic copy of a supplement thereto, dated May 20, 1953, said sales agreement and supplement constituting the entire agreement

between Northern Liquid Gas Company and the Pure Oil Company for the sale by the latter to the former of commercial propane (sometimes known as liquid propane) from the 1st day of March, 1953, to the 28th day of February, 1958;

"That the only propane products sold and delivered by said the Pure Oil Company to said Northern Liquid Gas Company subsequent to the effective date of said contract . . . are products which were sold and delivered pursuant to said sales agreement and said supplement thereto;

"That, among other things, said agreement provides:

" 'No claim of buyer (Northern Liquid Gas Company) on account of shortage or quality of products, or for any other cause, shall be allowed unless seller (the Pure Oil Company) is given notice, by telegram, by buyer on receipt of shipment, and authority to unload is given buyer by seller.'

"That . . . no notice . . . of any claim of Northern Liquid Gas Company on account of the quality of the products sold and delivered to it under said agreement or for any other cause has at any time during the life of said agreement been received by the Pure Oil Company."

No counteraffidavit was presented. The validity of the contract is not in dispute. In the original complaint there had not only been assertion that Northern Liquid Gas Company had failed to inspect Cerny's gas system, but that the gas delivered to Cerny was not properly odorized.

We are concerned here with the effect of the contract on the attempt of Northern Liquid Gas Company to recover on its cross complaint against the Pure Oil Company.

For the sake of brevity we shall hereinafter refer to Northern Liquid Gas Company as "Northern" and to Pure Oil Company as "Pure."

The contract is not one that would give the effect of denying to the plaintiffs any right to recover damages against either or both companies as joint tort-feasors. The plaintiffs assert no claim against Pure, and hence we are not confronted with any question as to rights which they may have against that company. Under the pleadings there could be no judgment against Pure unless Northern were adjudged

liable to plaintiffs, and any such judgment against Pure would be in favor of Northern and would be of no benefit to the plaintiffs. The issue raised is whether Northern under such circumstances would be entitled to recover from Pure in view of the provision of the contract referred to in the affidavit, and the absence of any notice of claim.

Persons may legally contract for a division between themselves of their liability and the consequences of their negligent acts toward third persons. The rule to that effect is expressed in Restatement, 2 Contracts, p. 1079, sec. 574. The principle was recognized in *Johnson v. Prange-Geussenhainer Co.* (1942), 240 Wis. 363, 374, 2 N. W. (2d) 723, where it was said:

"The indemnity provision does not affect the rights of the plaintiff against either or both of these defendants. . . . The issue now is simply as to who is to bear the loss. That such a provision is valid in so far as the immediate parties are concerned and not void as against public policy seems to be settled."

Northern contends that the contract does not bar the claim in the cross complaint for contribution against Pure. It maintains that the contract intended only to cover situations where the liquefied gas delivered by the seller to the buyer would be inferior as to quality or short as to quantity. It submits that the intention of the parties in making the contract was only to cover breach of warranty or contract actions between buyer and seller, and that a consideration of liability for tort to third persons was not within the intention of the parties, nor can it be inferred from the language of the contract.

The contract between these parties is plain and unambiguous.

The language of a contract must be understood to mean what it clearly expresses. A court may not depart from the

plain meaning of a contract where it is free from ambiguity. *Depner v. United States Nat. Bank* (1930), 202 Wis. 405, 232 N. W. 851. In construing the terms of a contract, where the terms are plain and unambiguous, it is the duty of the court to construe it as it stands, even though the parties may have placed a different construction on it. *George J. Meyer Mfg. Co. v. Howard B. & C. Co.* (1945), 246 Wis. 558, 18 N. W. (2d) 468. It seems to us that when parties to a contract adopt a provision which does not contravene a principle of public policy, and which contains no element of ambiguity, the court has no right, by a process of interpretation, to relieve one of them from any disadvantageous terms which he has actually made.

Northern's alternate claim for contribution against Pure, as appears in the cross complaint, is predicated upon liability of Pure in negligently furnishing defective gas to Northern, which it in turn supplied to the owner of the premises where the explosion occurred.

By its contract, Northern agreed to forego any right of claim on account of the quality of gas furnished to it by Pure, or for any cause, unless the condition precedent in the contract, to wit, the notice of receipt of shipment had been given and the unloading had been authorized.

From the language in the cross complaint wherein it is alleged that Pure furnished to Northern gas "without the proper application of an odorizing agent of sufficient strength to give warning of an improper escape of gas," it is plain that Northern, when purchasing gas from Pure, expected to receive gas that was odorized. It appears that not only was odorization to be an element of the gas that was to be furnished, but the gas was required to be of "sufficient strength" to give proper warning. Obviously, the purpose of an odorizing agent is to immediately and definitely give warning to people of the presence of gas. Unodorized gas is dangerous

in that it may not easily be detected. The industrial commission's Order 901 of which we take judicial notice provides as follows:

"All liquefied petroleum gases shall be effectively odorized by an approved agent of such character as to indicate positively, by a distinctive odor, the presence of gas down to concentration in air of not over one fifth the lower limit of combustibility; provided, however, that odorization is not required if harmful in the use or further processing of the liquefied petroleum gas, or if odorization will serve no useful purpose as a warning agent in such use or further processing."

Odorization and the strength of it are clearly encompassed within the meaning of the term "quality" when referring to liquefied gas such as was to be furnished by Northern. If such gas lacked odorization, or in the event that it was not of "sufficient strength," it was defective in quality. Anyone cognizant of such defect would know that it was dangerous. Certainly it must be understood that the parties here were aware of the danger of the commodity with which they were dealing, and that they appreciated particularly the hazards attendant upon the consumers' use of gas not properly odorized. It would be unreasonable to declare that such factors could not have been or were not within the contemplation of these parties at the time when the contract was made, or that the parties did not consider that claims by third parties arising out of the negligent handling or dispensing of insufficiently odorized gas by them, could or might be made against them.

The contract provides that no claim on account of quality shall be allowed unless there shall have been compliance with the conditions. The agreement does not limit claims affecting quality only to contract consideration. Had it been so intended, it could have been expressed. Not being expressed,

the court is not at liberty to add language that would tend to exclude tort-liability exemption. Since the contract is clear and unambiguous on its face and as applied to the subject matter, there is no room for construction, or for oral testimony, to show an intent different from that indicated. To condition the right of claim upon an agreement that no claim shall be allowed unless the conditions have been performed, is not an unreasonable provision. Pure's apparent endeavor by such means to protect itself as against Northern with reference to claims asserted against both by others arising from the dispensing of improperly odorized gas, is not contrary to public policy. The contract clearly indicates an intention that Pure was to be absolved by Northern from any such liability, unless it had been notified as provided. Lack of proper odorization of gas is a patent defect, easily discernible. By virtue of Northern's failure to give notice in the present matter, Pure was not afforded opportunity to inspect the gas, and it was thereby precluded from determining for itself whether the gas was properly odorized when delivered,—a condition which was patent and not latent. When Northern failed to give the required notice under the contract provision in question, it forfeited its right of claim against Pure for any tort liability resulting from the deficiency of the gas. The matter of quality was involved. The contract is a bar to any right of contribution in favor of Northern against Pure.

Since there are no genuine or substantial issues of fact to be tried, and in view of the conclusions reached herein, the motion for summary judgment must be granted.

*By the Court.*—Orders reversed. Cause remanded with direction to enter summary judgment dismissing the cross complaints.