GERRUTH REALTY COMPANY, Appellant, v. PIRE and wife, Respondents.

*May 2—June 5, 1962.*

For the appellant there was a brief by *Hansen, Eggers, Berres & Kelley* of Beloit, and oral argument by *Larry J. Eggers.*

For the respondents there was a brief by *Robson, Daniel & Robson,* and oral argument by *Marshall W. Robson* and *John E. Borgerding,* all of Beloit.

HALLOWS, J.    Contracts of purchase or offers to purchase containing "subject to financing" clauses are fairly common and the clauses have been construed frequently as constituting a condition precedent to the buyer's performance.[1] The initial question in reference to such a contract is whether it is definite enough to be sustained or, if indefinite, whether it may be given a meaning which renders the contract certain. Courts are not inclined to strike down such a contract for uncertainty if the deficiency can be supplied consistent with reasonableness in the interest of preserving the contract

---

[1] *Boulevard Builders v. Snyder* (1961), 13 Wis. (2d) 486, 108 N. W. (2d) 914; *Locke v. Bort* (1960), 10 Wis. (2d) 585, 103 N. W. (2d) 555. See also Aiken, "Subject to Financing" Clauses In Interim Contracts For Sale of Realty, 43 Marquette Law Review (1960), 265, 290.

which parties thought they made. A contract is certain which may be made certain from the surrounding circumstances.[2]

In *Locke v. Bort, supra,* this court pointed out "subject to financing" clauses could not be construed solely by the language of the contract and without consideration of the surrounding circumstances. On this theory, the plaintiff argues the clause "contingent upon the purchaser obtaining the proper amount of financing" must be construed in the light of current practices in the community with respect to financing of similar transactions. The defendants contend the clause in the light of the circumstances gave the option to the defendants to determine what the proper amount of financing was in relation to his particular needs. It was this latter view which the trial court adopted. However, any interpretation, which allows one party to a contract to determine without limitation and in a subjective manner the meaning of an ambiguous term, comes dangerously close to an illusory or aleatory contract (see 3A Corbin, Contracts (1960), ch. 38, p. 399) if it does not in fact reach it.

The evidence does not disclose what was said concerning the amount and details of the financing of the purchase excepting the defendants thought they would have no difficulty in arranging financing. An inference might be drawn from the fact the down payment was not cash but in the form of a promissory note for $5,000 payable on the closing and the offer was also conditioned upon the purchase and simultaneous closing of the Putterman property, that the defendants would need to borrow a large part, if not the total amount, of the purchase price of both properties. The transcript of the evidence is barren of any communicated details of the amount or terms of the financing which the defendants had

[2] *George v. Oswald* (1956), 273 Wis. 380, 78 N. W. (2d) 763; *Kelley v. Ellis* (1956), 272 Wis. 333, 75 N. W. (2d) 569, 76 N. W. (2d) 540; *Taylor v. Bricker* (1952), 262 Wis. 377, 55 N. W. (2d) 404; *Inglis v. Fohey* (1908), 136 Wis. 28, 116 N. W. 857.

in mind, if they had any, or tentative ones, or what was understood by the real-estate broker representing the plaintiff. Apparently both parties had something in mind when this clause was inserted in the offer to purchase for the benefit of the defendants. The real-estate broker, presumably familiar with the difficulties, details, and terms of financing, might have asked the defendants for more details, but was apparently content with putting something in writing and having it signed by the purchasers.

The problem presented is whether there is sufficient evidence upon which this court can ascertain the intention of the parties, *i.e.,* whether there was a meeting of the minds, even objectively, concerning the meaning of this clause. If it is impossible to fairly ascertain such intention, the contract must fail for indefiniteness. The facts of this case are distinguishable from *Kovarik v. Vesely* (1958), 3 Wis. (2d) 573, 89 N. W. (2d) 279, in that an essential term (the amount of financing) is not designated. In *Kovarik,* the clause "contingent upon buyer's ability to arrange above-described financing," referring to his $7,000 purchase-money mortgage from the Fort Atkinson Savings & Loan Association was held to give the purchaser the option to select the terms of financing, which he exhausted upon making an application to the Fort Atkinson Savings & Loan Association. The court construed, in view of the evidence, that the particular lending institution was not an essential term of the clause and it made no difference from whom the buyer obtained his loan.

In the two cases which we were able to find in which the amount of the financing was not stated in the contract, the court did not hold the contract void. In *Reese v. Walker* (1958) Ohio Op. (2d) 55, 151 N. E. (2d) 605, the facts are somewhat analogous. There, the contract for the purchase of real estate contained the clause "contingent upon securing necessary financing." The court held the buyers

had the right to determine the terms of financing they needed and the seller was in no position to complain if the buyers honestly determined what kind of a loan they needed. A similar view was taken in *Zigman v. McMackin* (1958), 6 App. Div. (2d) 907, 177 N. Y. Supp (2d) 723, wherein the contract obligated the purchaser to apply for a purchase-money mortgage loan of not more than $10,000 at 5 percent due in fifteen years or longer. In both these cases, the court found a meaning from the circumstances surrounding the execution of the contract and from the purposes the parties sought to accomplish, namely, a loan in such amount or on such terms as the buyer in good faith considered necessary for his purposes.

We do not reach the question of good faith on the part of the defendants in the instant case in determining the amount of the financing because we believe the contract cannot be made certain by the surrounding circumstances. In our view, the good-faith issue arises only after the determination of the meaning of the ambiguous phrase. True, if we could interpret the contract from the surrounding circumstances that it was intended to give the defendant buyers the sole right to determine the amount of financing, then they would be required to determine in good faith the amount of the loan which they honestly needed. Since financing is such an important element in the purchase of real estate, it is to be wondered why so little attention is paid to this important element in the contract or offer of purchase by those dealing in the sale of real estate.

We cannot find in the evidence any indication upon which even a reasonable inference can be drawn that the parties contracted knowingly and in light of any current practices in the community of Beloit with respect to financing of similar transactions. The evidence sets forth what the current practices were but there is no evidence both parties had them in mind at the time the offer to purchase was executed.

Likewise, we cannot agree this clause gave the defendants the exclusive or absolute option or privilege to determine the proper amount of financing without holding the contract illusory. The contract, and the evidence also, are silent as to all the other terms and conditions of the loan, many of which terms and conditions are interrelated and vary with the security and the borrower. The evidence shows the defendant Walter E. Pire attempted to or at least desired to borrow from his bank $5,000 more than the combined purchase price of the two properties, which the court inferred the defendant intended to use for remodeling. Such a loan was beyond the limit of current practices in the community. The defendant met other difficulties in attempting to finance the purchase which he had not anticipated, namely, the bank's policy of not loaning in excess of $100,000 to a customer. If this evidence is taken as indicating what the defendants had in mind at the time they signed the offer of purchase, it was not communicated to the agent of the plaintiff.

It seems to us, if we were to adopt either the interpretation contended for by the plaintiff or that urged by the defendants, we would be making, in fact, a contract for the parties by supplying an essential term thereof rather than interpreting what they mutually meant by an ambiguous term. We find the task of interpreting this contract, on the evidence presented, impossible and must hold the contract void for indefiniteness.

*By the Court.*—Judgment affirmed.