Joe L. PERKINS and Sherrion Dotson, a/k/a Sherrion L. Perkins, Plaintiffs-Respondents,

v.

Carl L. GOSEWEHR and Ruth M. Gosewehr, Defendants-Appellants.

Court of Appeals

*No. 79–1686. Submitted on briefs June 3, 1980.
—Decided July 16, 1980.*
(Also reported in 295 N.W.2d 789.)

For the appellants, the cause was submitted on the briefs of *Thomas W. LaFave* and *Horth, Malm & LaFave* and *Quarles & Brady,* of Milwaukee.

For the respondents, the cause was submitted on the brief of *A. A. Hindin,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J.   Joe L. Perkins and Sherrion Dotson, a/k/a Sherrion L. Perkins (Perkins), entered into a residential real estate purchase agreement with Carl L. and Ruth M. Gosewehr (Gosewehr).[1] The agreement contained a financing contingency clause reading in pertinent part, "This offer is contingent upon buyer obtaining a first mortgage commitment for $52,000." We find the contract unenforceable because it is void for indefiniteness.

On September 14, 1977, Perkins submitted an offer to purchase the Gosewehr home located in Brown Deer, Wisconsin, for $65,000. The offer was made subject to a financing contingency clause reading in full:

This offer is contingent upon buyer obtaining a first mortgage loan commitment for $52,000. Buyer shall furnish seller with firm mortgage loan commitment within 12 working days of acceptance of this offer or seller may, at his option, cancel this contract, and all monies paid by the buyer shall be refunded. Buyer agrees to cooperate fully to fulfilling [sic] the above contingency.

The offer was rejected.

Subsequently, on September 18, 1977, Perkins submitted another written offer, this time for $73,250. The

---

[1] For the sake of convenience in this opinion, we designate the name Perkins to refer to Joe L. and Sherrion L. Perkins, and the name Gosewehr to refer to Carl L. and Ruth M. Gosewehr.

offer of September 18, 1977, contained the same financing contingency clause as the prior[2] offer. Perkins paid Gosewehr $2,100 as earnest money and the offer was accepted September 18, 1977.

On September 24, 1977, Perkins consulted a loan officer at St. Francis Building and Loan Association, St. Francis, Wisconsin. Perkins received a written "good faith estimate" statement which provided that a mortgage of 80% of the sales price, in the sum of $58,600, with interest at the rate of $8\frac{3}{4}\%$, for a 30-year term, would result in monthly payments of $617. The following day, September 25, 1977, Perkins advised Gosewehr that they could not afford that monthly payment and therefore could not go through with the deal. Perkins made no further efforts to obtain other financing. They did not make a formal loan application, nor did they specifically seek a $52,000 mortgage.

Perkins requested the return of their earnest money from Gosewehr. The offer to purchase provides: "Should the undersigned Buyer fail to carry out this agreement, all money paid hereunder shall, at the option of the Seller, be forfeited as liquidated damages and shall be paid to or retained by the Seller, . . . ."

Relying on this language, Gosewehr retained the earnest money paid by Perkins.

In October, 1977, Gosewehr sold their real estate for $73,400. No real estate commission was involved.

Perkins brought this action to recover the $2,100 earnest money deposit paid to Gosewehr.

The trial court concluded that Perkins acted in good faith in attempting to secure financing but "were in over their heads." Consequently, the trial court held that

[2] We note that the prescribed $52,000 loan was 80% of the first offering price, but substantially less than 80% of the second offering price.

Perkins were entitled to a return of the earnest money deposit. We affirm, but for a different reason.

On appeal, Gosewehr contends that Perkins are not entitled to a return of their earnest money deposit because they did not exercise good faith and reasonable diligence in attempting to satisfy their obligations under the financing contingency clause. We do not reach the question of good faith on the part of Perkins because we believe the contract is void for indefiniteness. *Gerruth Realty Co. v. Pire,* 17 Wis.2d 89, 95, 115 N.W.2d 557, 560 (1962).

In *Gerruth,* our supreme court explained that the initial inquiry concerning a purchase contract containing a "subject to financing" clause is whether the clause is sufficiently definite to establish that the parties reached a meeting of the minds as to acceptable financing arrangements.

The subject to financing clause in this contract provides only the principal amount of the mortgage, $52,000. Gosewehr contends that this is sufficient.[3] We disagree.

---

[3] The Gosewehrs rely, in part, on the analysis of financing contingency clauses by Professor Walter B. Raushenbush, *Problems and Practices with Financing Conditions in Real Estate Purchase Contracts,* 1963 Wis. L. Rev. 566. In a hypothetical set of facts, Professor Raushenbush wrote that the *Gerruth* decision "suggested" that the statement of the total amount of needed loan in the financing condition would save the contract from being void for indefiniteness even though no other details of the needed loan are given. While the suggestion is made for purposes of discussing the hypothetical set of facts, Professor Raushenbush also recognized that *Gerruth* did not so hold as a matter of law. Rather, Professor Raushenbush observed that the question of the indefiniteness of a financing contingency clause containing the mortgage amount but otherwise silent as to terms and details was not addressed under the fact situation of *Gerruth.* Professor Raushenbush encouraged the courts "to throw out badly drafted or vague contracts as void for indefiniteness, following the *Gerruth* case. Such an approach will eventually force the drafters of purchase contracts to use adequate detail." *Id.* at 621.

As is usually the case, a buyer purchasing residential real estate intends to finance a part of the purchase price at terms he can afford or desires. The buyer insists upon a financing contingency clause in the offer to purchase to insure that he will not be bound by the contract unless he can obtain financing upon the desired terms. For the parties to reach a meeting of the minds as to the financing contingency, the clause must be sufficiently detailed to establish the factors that would produce acceptable financing for the buyer, but not specify such stringent and improbable terms that would deter the seller from agreeing to the offer.

Whether the principal amount of the financing is acceptable depends upon the buyer's ability to repay it. The ability to repay turns upon the terms and conditions of the financing which "vary with the security and the borrower," *Gerruth, supra* at 95, 115 N.W.2d at 560. Financial ability to repay the loan is significantly affected by:

(1) the interest rate on the principal loan, and whether it is a fixed or variable rate and subject to an escalation or reducing clause;

(2) the maturity date of the loan;

(3) the amortization period and whether the principal will be fully or partially amortized over the term of a loan;

(4) whether the loan will contain rollover provisions;

(5) whether the loan will provide for payments in varying amounts and for varying periods;

(6) the costs of obtaining the loan; and

(7) monthly tax and insurance escrow prepayments.[4]

The list is not complete and serves only to illustrate some

---

[4] Circumstances presently surrounding the financing of residential real estate suggests that buyers are being offered a variety of financing packages. *See* S. Cowan and S. Foley, *New Trends in*

of the more common considerations of the cost of debt service and one's ability to pay it.

In earlier legal and economic history, available mortgage financing was so relatively uniform in structure that the clause "subject to financing" in a residential real estate purchase contract may well have adequately described the intention of the parties. As buyer equity requirements changed, specifying the amount of the mortgage loan was thought to adequately express the reasonable intention of the parties as to loan length and interest rate because they were closely tied in practice to the amount of the buyer's equity. However, mortgage financing packages proliferated to an extent that it was thought provident to add the specification of term, amortization provision, and interest rate.

■

Current financing practices have changed with other economic practices and have become more ingenious and varied. As the alternative mortgage financing packages multiply,[5] simplistic terms become less capable of evidencing the intention of the parties.

■

When the affordable (or desired) and acceptable amount, terms, and conditions of the loan are not set forth in the subject to financing clause, our supreme court has directed that the circumstances surrounding the contract be considered to determine whether the deficiencies can be supplied. In *Gerruth*, the contract and the evidence introduced in the trial court failed to reveal the amount, terms, and conditions of the loan so the contract was determined void because indefinite. In the

*Residential Mortgage Finance*, 13 Real Property, Probate and Trust Journal 1075 (1978). Variations intensify the need for definiteness in the financing contingency clause.

[5] Federal Home Loan Bank Board, *The Alternative Mortgage Instruments Research Study, (AMIRS)*, (Kaplan ed. 1977).

earlier case of *Kovarik v. Vesely,* 3 Wis.2d 573, 89 N.W.
2d 279 (1958), the principal amount of the loan was set
forth in the subject to financing clause and the supreme
court permitted the terms and conditions of the loan to
be supplied from the record made at the trial court. In
*Lien v. Pitts,* 46 Wis.2d 35, 174 N.W.2d 462 (1970), the
supreme court affirmed a trial court decision to grant
a new trial so that evidence of the circumstances sur-
rounding a subject to financing clause could be present-
ed to the trial court to determine if the contract was
sufficiently definite.[6]

We turn to the record before us on this appeal to as-
certain whether the mortgage terms and conditions can
be supplied to the stated principal amount to make the
clause definite. *Gerruth, supra.*

The agreed facts and the exhibits in this case do not
establish an intended interest rate, let alone whether the
rate must be fixed or could be variable. The evidence
does not establish the maturity term of the loan nor
whether the principal would be fully or partially amor-
tized during the term. Nor does the evidence establish
whether the parties intended the monthly escrow of
taxes and insurance, nor what would constitute afford-
able or desirable costs of obtaining the financing. Ac-
cordingly, we conclude that the statement of the amount
of the loan does not fill the evidentiary void, and does
not establish that the parties reached a meeting of the
minds concerning the primary objective of the "subject
to financing" clause, i.e., what financing would be af-

---

[6] "Courts are not inclined to strike down such a contract for
uncertainty if the deficiency can be supplied consistent with
reasonableness in the interest of preserving the contract which
parties thought they made. A contract is certain which may be
made certain from the surrounding circumstances." *Gerruth,* 17
Wis.2d at 91–92, 115 N.W.2d at 558–59, *quoted in Lien,* 46 Wis.2d
at 44, 174 N.W.2d at 467.

fordable or desirable to the buyers and acceptable to the sellers. In the absence of such evidence, the contract is void for indefiniteness.

To avoid misunderstanding, we reemphasize that we do not infer that to achieve the definiteness essential to enforcement of a residential real estate purchase contract requires an expansive recitation of mortgage financing details. Excessive detail may be counterproductive to enforcement of the contract by unwarrantedly narrowing the contingency clause to an extent that makes its fulfillment improbable.[7] It also ignores the fiscal reality that the total effect of the financing terms is often more important than the variation in individual details which often offset each other. For the latter reason, financing clause terms are better stated in essentials so that inconsequential variances resulting from current financial market conditions do not preclude consummation of the transaction. Considering the question of definiteness in the context of financing essentials com-

---

[7] For example, in *Woodland Realty, Inc. v. Winzenried,* 82 Wis.2d 218, 262 N.W.2d 106 (1978), the subject to financing contingency clause was rather extensive in specifying essentials, but omitted reference to an interest rate escalation clause. The buyer obtained a mortgage loan commitment which contained an escalation clause and subsequently withdrew from the purchase contract. Our supreme court held that the escalation clause was a material deviation from the subject to financing clause and thus the contract was not enforceable. Obviously the drafter of the subject to financing clause who specifies too little risks a finding of invalidity for indefiniteness and may achieve the same result if he specifies too much.

Perhaps a solution may be provided by the developing practice of keeping the property on the market during the contingency period and enabling the seller to terminate the contingency upon reasonable notice if the seller has a better offer. The first buyer then has the option to remove the contingency and complete the transaction or forego the purchase. *See* 62 Marq. L. Rev. 123 (1978).

ports with the realities of a purchase of residential real estate. Seldom does a buyer approach such a purchase with forethought to intricate financing details. The specifics of infinite financial variables are usually arrived at after the seller has been committed to sale.

As our supreme court stated in *Gerruth:* "Since financing is such an important element in the purchase of real estate, it is to be wondered why so little attention is paid to this important element in the contract or offer of purchase by those dealing in the sale of real estate." 17 Wis.2d at 94, 115 N.W.2d at 560.

*By the Court.*—Judgment affirmed.