David GILDEA and Penny Gildea,
Plaintiffs-Appellees,

v.

James KAPENIS, Defendant-Appellant.

No. 6–329.

Court of Appeals of Iowa.

Jan. 28, 1987.

**458**

William G. Deck of Deck & Deck, Sioux City, for defendant-appellant.

Francis L. Goodwin, Sioux City, for plaintiffs-appellees.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

Defendant buyer appeals from a judgment for the plaintiff sellers in an action for specific performance of an agreement to purchase real estate. The defendant asserts that the trial court erred in holding that the purchase agreement was sufficiently definite and certain as to the parties obligations to be specifically enforced and that a condition precedent did not occur. We reverse.

On October 21, 1984, the defendant, James Kapenis, went to an open house of the plaintiffs, David and Penny Gildea. At that time Mr. Kapenis met with the Gildeas' realtor, Susan Murphy. Later that evening Mr. Kapenis met with Mrs. Murphy to discuss making a bid on the Gildea home. A purchase offer was prepared by Mrs. Murphy which contained a clause stating that the contract was "subject to buyer obtaining suitable financing interest rate no greater than 12¾%." The first purchase offer was countered by the Gildeas, and a second purchase offer using the same "suitable financing" language was prepared. On October 22, 1984, Mr. Kapenis signed the purchase agreement and was subsequently orally advised that day that the Gildeas had accepted the second purchase agreement.

Mr. Kapenis, Mrs. Murphy, and Mike Borschuk of Century 21 Marketplace then began a search for financing. Mr. Kapenis had been interested in an adjustable rate mortgage offered by First Federal Savings and Loan. Mr. Kapenis learned, however, that under this mortgage the interest rate could be adjusted twice in a year and that two percentage points could be added to the adjusted rate after the two-year fixed period. At a meeting with Mrs. Murphy, Mr. Kapenis expressed displeasure with the First Federal loan and requested that she seek additional forms of financing.

Mrs. Murphy continued to inform Mr. Kapenis about various loan programs, but because the monthly payments were too high, Mr. Kapenis stated they were unsuitable. Mike Borschuk then looked to the financing available and informed Mr. Kapenis of a loan program of a 15–year term at 12½% interest. Mr. Kapenis stated that the monthly payments would be too high and not assumable and that such terms were unsatisfactory. Mr. Kapenis then informed the Gildeas that he could not find suitable financing and that he was withdrawing his offer.

The Gildeas subsequently filed the present lawsuit, seeking specific performance of the contract. Mr. Kapenis claimed that the "subject to financing" clause was too indefinite and uncertain for the contract to be specifically enforced. Specifically, Mr. Kapenis argued that the "suitable financing" clause was a condition precedent, meaning that unless he found financing suitable to his ability to pay, there was no enforceable contract to purchase the real estate. The trial court, however, ruled that the "subject to financing" clause was sufficiently definite and certain as to the obligations of the parties and that the contract was enforceable. The trial court found that the "suitable for financing" clause did not mean financing suitable to the buyer's terms, but rather provided that if financing was found within the interest rate stated in the clause, the buyer was bound and the contract enforceable. The trial court therefore found in favor of the Gildeas and rendered a judgment of $53,500.00 with interest of 10% per annum against Mr. Kapenis. Mr. Kapenis has subsequently appealed.

Our scope of review of an action for specific performance of a real estate purchase contract is de novo. *Nasco Land Development Co., Inc. v. Osborne*, 210 N.W.2d 638, 640 (Iowa 1973). In equity cases, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but we are not bound by them. Iowa R.App.P. 14(f)(7). The plaintiff's burden in a suit for specific performance is to prove by clear, satisfactory, and convincing evidence the terms of the contract declared upon in his or her pleadings. *Recker v. Gustafson*, 279 N.W.2d 744, 750 (Iowa 1979). Specific performance of a contract, however, is not a remedy which is available as a matter of right. *Youngblut v. Wilson*, 294 N.W.2d 813, 817 (Iowa 1980). Rather, its availability rests in the sound discretion of the court. *Id.*

The principle question we are asked to decide in the present case is whether the "subject to financing" clause contained in the purchase agreement was so definite and certain in its terms as to be enforceable. We must therefore look to Iowa contract law in making our determination. Generally, in order to be binding, an agreement must be definite and certain as to its terms to enable the court to give it an exact meaning. *Palmer v. Albert*, 310 N.W.2d 169, 172 (Iowa 1981); *Davis v. Davis*, 261 Iowa 992, 1001, 156 N.W.2d 870, 876 (1968). It is not even enough that the parties have agreed if their expressions, in light of the attendant circumstances, are not such that the court can determine what the terms of that agreement are. 1 Corbin on Contracts, § 95 at 394 (1963). Vagueness of expression, indefiniteness, or uncertainty as to any of the essential terms of the agreement may prevent the creation of an enforceable contract. *Id.* Such vagueness, indefiniteness, or uncertainty are, however, matters of degree, and therefore each case must be decided on its own particular circumstances. *Davis*, 261 Iowa at 1001, 156 N.W.2d at 876.

The "subject to financing" clause, such as the one which is the subject matter of this appeal, has been held to constitute a condition precedent. *Khabbaz v. Swartz*, 319 N.W.2d 279, 283 (Iowa 1982). "Conditions precedent are .... those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa Ct.App. 1979). A determination that a condition precedent exists does not, however, depend on the particular form of the words used, but rather depends upon the intention of the parties gathered from the language of the entire instrument. *Id.*

A contract is ambiguous if it is reasonably susceptible to more than one construction. *Champale, Inc. v. Joseph S. Pickett & Sons, Inc.*, 599 F.2d 857, 859 (8th Cir.1979), *appeal after remand* 671 F.2d 289 (8th Cir.1982); *Mopper v. Circle Key Life Insurance*, 172 N.W.2d 118, 124 (Iowa 1969). When interpreting contractual terms chosen by the parties, we must ascertain the meaning and intention of the parties as expressed by the language used. *Pathology Consultants v. Gratton*, 343 N.W.2d 428, 434 (Iowa 1984). Words of a contract are to be interpreted within the context in which they are used. *Home Federal Savings & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 617 (Iowa 1984). The document, however, must also be read in light of the surrounding circumstances and will be given such a practical meaning as the parties themselves have placed upon it. *Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984). Doubtful language in a written instrument will be construed against the party which selected it. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 27 (Iowa 1978).

While our own independent examination has revealed no Iowa cases which have interpreted the meaning of a financing clause as contained in this case, several Iowa cases and cases of other jurisdictions have interpreted the meaning of similar

phrases in a contract for purchase of real estate, holding that where the financing clauses are not specific, or where a condition precedent has not been satisfied, the real estate contract is null and void.

■ In *Khabbaz v. Swartz*, 319 N.W.2d 279, 280 (Iowa 1982), the plaintiff buyer had orally agreed to purchase defendant's home for $100,000.00. The plaintiff, however, was unsure of his ability to finance the home and conditioned his willingness to purchase upon his ability to qualify for and obtain a conventional institutional real estate loan. 319 N.W.2d at 281. The defendant sellers hired an attorney to draft the offer to buy, such draft containing the following clause:

> SUBJECT TO FINANCING: This Offer to Buy is subject to Buyer obtaining a conventional real estate mortgage loan equal to 65% of the appraised value of the above described real estate with payments to be based upon a 20 year amortization with a Promissory Note which will become due and payable in five (5) years. If said financing is not obtained by September 5, 1979, this Offer to Buy shall be cancelled and all sums paid hereunder shall be refunded to Buyers.

After several changes were made the contract was signed by both parties. *Id.* Plaintiff then received a loan commitment for $65,000.00, but the commitment was subsequently revoked when the bank realized the plaintiff's income was less than they had first believed. *Id.* Plaintiff then informed the defendants that he therefore considered the contract cancelled. *Id.* The Iowa Supreme Court, in affirming the trial court's ruling rescinding the offer to buy contract, held that "[i]f an offer to buy and sell real estate is conditioned upon the purchaser obtaining a loan, failure to obtain the loan renders the contract null and void." *Id.* at 284. While the detailed clause in *Khabbaz* does not deal with the same financing clause as the one that is the subject of the present case, *Khabbaz* is illustrative of the general rule in Iowa where a condition precedent cannot be met

to satisfy the terms of the contract, the contract will be void.

■ In *Tri-States Investment Co. v. Henryson*, 179 N.W.2d 362 (Iowa 1970), the plaintiff had secured an option to purchase up to six acres of land. The option, in pertinent part, provided that the vendors agreed to hold six acres or less for the price of $5,000.00 per acre, payable by cash or land contract. 179 N.W.2d at 363. The option further provided that the land terms were to be agreed upon after the plaintiffs exercised the option. *Id.* In affirming the trial court's dismissal for specific performance on the contract, the Iowa Supreme Court held that "[a]n agreement in an option to resolve the basic terms of a land contract in the future renders the terms of the option so indefinite, uncertain and incomplete that equity will not enforce it by specific performance." *Id.* at 364. While the contract financing clause in *Tri-States Investment* did not contain a mortgage rate ceiling like the one in the present case, *Tri-States Investment* is an example of the Iowa rule that contract terms which are indefinite or vague will render a real estate contract unenforceable.

Other jurisdictions have also considered the question of whether a "subject to financing" clause was vague or indefinite. In *Nodolf v. Nelson*, 103 Wis.2d 656, 657, 309 N.W.2d 397, 398 (Ct.App.1981), the Wisconsin Court of Appeals considered the question of whether an agreement is enforceable where the buyer's obligations to perform were conditioned upon his obtaining unspecific financing. The *Nodolf* court stated that a "subject to financing" clause creates a condition precedent to the buyer's performance. 103 Wis.2d at 658, 309 N.W.2d at 398. The court further opined that this condition delays the enforceability of the contract until the condition is met. *Id.* The financing clause in *Nodolf* stated as follows: "Above offer is subject to obtaining financing by July 25, 1979." *Id.* The *Nodolf* court held that because no financing terms whatever were specified, the entire agreement to buy real estate was unenforceable. *Id.* at 659, 309 N.W.2d at 399. The *Nodolf* court, however, found

that a purchaser generally does not have the exclusive or absolute option to determine the proper amount of financing. *Id.* at 660, 309 N.W.2d at 399. To hold otherwise would render the contract illusory. *Id.*

In another Wisconsin case, *Perkins v. Gosewehr,* 98 Wis.2d 158, 159, 295 N.W.2d 789, 790 (Ct.App.1980), the buyer submitted an offer to purchase the seller's real estate, subject to a financing contingency clause reading as follows:

> This offer is contingent upon buyer obtaining a first mortgage loan commitment for $52,000. Buyer shall furnish seller with firm mortgage loan commitment within 12 working days of acceptance of this offer or seller may, at his option, cancel this contract, and all monies paid by the buyer shall be refunded. Buyer agrees to cooperate fully to fulfilling [sic] the above contingency.

The first offer was rejected, and the buyer made another offer containing the same financing contingency clause, which was accepted. 98 Wis.2d at 160, 295 N.W.2d at 790. The buyer then consulted a loan officer, who provided an estimate as to the monthly payments on a loan taken under the terms of the mortgage offered. *Id.* The buyer informed the sellers that he could not afford the monthly payments and therefore could not go through with the deal. *Id.* When the sellers refused to return the earnest money, the buyers brought suit for its return. *Id.* The trial court ruled that the buyer was entitled to the return of the earnest money because he had made a good faith attempt to secure financing. *Id.,* 295 N.W.2d at 790–91.

In affirming the trial court, the Wisconsin Court of Appeals did not reach the good faith issue. 98 Wis.2d at 161, 295 N.W.2d at 791. The court stated that:

> As is usually the case, a buyer purchasing residential real estate intends to finance a part of the purchase price at terms he can afford or desires. The buyer insists upon a financing contingency clause in the offer to purchase to insure that he will not be bound by the contract unless he can obtain financing upon the desired terms. For the parties to reach a meeting of the minds as to the financing contingency, the clause must be sufficiently detailed to establish the factors that would produce acceptable financing for the buyer, but not specify such stringent and improbable terms that would deter the seller from agreeing to the offer.

> Whether the principal amount of the financing is acceptable depends upon the buyer's ability to repay it. The ability to repay turns upon the terms and conditions of the financing which "vary with the security and the borrower," [citation omitted]. Financial ability to repay the loan is significantly affected by:

> (1) the interest rate on the principal loan, and whether it is a fixed or variable rate and subject to an escalation or reducing clause;

> (2) the maturity date of the loan;

> (3) the amortization period and whether the principal will be fully or partially amortized over the term of a loan;

> (4) whether the loan will contain rollover provisions;

> (5) whether the loan will provide for payments in varying amounts and for varying periods;

> (6) the costs of obtaining the loan; and

> (7) monthly tax and insurance escrow prepayments.

*Id.* at 162, 295 N.W.2d at 791. The *Perkins* court went on to recognize that current financing packages have significantly changed, becoming increasingly varied and ingenuous. *Id.* at 163, 295 N.W.2d at 792.

In *Reese v. Walker,* 6 Ohio Op.2d 55, 56, 151 N.E.2d 605, 606 (Ohio Munic.Ct.1958), the court considered the meaning and application of a "subject to financing" clause containing the words "contingent upon securing necessary financing." The facts in *Reese* are very similar to the present case. In *Reese,* the plaintiffs' agent had gone to numerous lending institutions in an attempt to borrow the funds necessary for plaintiffs to consummate a sale of real estate. 6 Ohio Op.2d at 56, 151 N.E.2d at

606. The sale did not take place, however, because the plaintiffs were not financially able to take out a mortgage on the financing terms available. *Id.* The *Reese* court interpreted the phrase "contingent upon securing necessary financing" to mean that the plaintiffs would consummate the sale only if they were able to borrow the amount they needed. *Id.* at 57, 151 N.E.2d at 608. The court further held that "[u]nder the contract as executed only the buyers can determine what financing they need." *Id.*

■ Applying the foregoing analysis to the present case, we believe that the term "suitable financing" as used by the parties in the present case means suitable according to the ability of Mr. Kapenis to repay. The financing clause contains only a general provision that the interest rate be no greater than 12¾% and is silent as to the amount, the term of the note, and points. We recognize, as have other jurisdictions, that in today's financial lending market, there are a wide variety of financial packages available. The length of the mortgage, the monthly repayments, discount points, and amortization provisions contained in a mortgage are all important factors to be considered by a buyer when applying for financing. A mortgage taken on an interest rate of 12% may not be as favorable in its terms as a mortgage taken on 12¾% interest. All the above noted factors are interdependent, and a provision for a ceiling cap of 12¾% interest does little to aid in a determination as to what constitutes suitable financing. An agreement, such as the one in the present case, generally reciting that performance of the contract is contingent upon the buyer securing suitable financing terms, with the only limitation being an interest rate ceiling, is too indefinite and uncertain for a meeting of the minds to have occurred regarding financing.

We also find that the actions of the parties and the circumstances surrounding the present agreement indicate that the sale of the Gildea property was conditioned upon Mr. Kapenis obtaining financing terms compatible with his ability to repay. At the time Mr. Kapenis made his purchase offer, he did not consider what interest rate to specify, nor was he familiar with what financing was available. Sue Murphy, the Gildeas' realtor, suggested that he put in an interest rate in the financing clause and also suggested that the term "suitable financing" be included in the clause. At trial, Mrs. Murphy testified on cross-examination that she had included the term "suitable financing" to enable Mr. Kapenis the opportunity to determine what he could afford.

Mr. Kapenis had shown some interest in the adjustable rate mortgage offered by First Federal Savings & Loan. Mrs. Murphy had stated to Mr. Kapenis that under this type of mortgage the interest rate would be adjusted once per year. However, upon meeting with a loan officer at First Federal, the parties learned that the actual interest could be adjusted twice per year. It was this unexpected condition that resulted in Mr. Kapenis deciding not to go ahead and process the loan. Throughout this period of time there was no consensus between the parties as to what would be suitable financing. Mr. Kapenis had, however, made various calculations to determine what he would pay per month on numerous proposals offered to him.

Mr. Gildea testified at trial that he understood that Mr. Kapenis was examining various financing options and that acceptable terms of financing had not been agreed upon. Mr. Gildea testified that *"we were looking for … the best rate for Mr. Kapenis…."* Mr. Gildea additionally admitted that the term "suitable financing" meant financing that would be acceptable to the buyer.

The Gildeas contend that the mortgage terms presented by Home Federal Savings & Loan were suitable. The monthly payments under the Home Federal loan were $419.00 per month for 15 years. These terms were, however, considerably different than those of First Federal's adjusted rate mortgage of $343.00 for 25 years in which Mr. Kapenis had initially been inter-

ested. Furthermore, Mr. Kapenis had earlier rejected similar terms from Security National Bank. It therefore cannot be said that the terms of Home Federal's mortgage were acceptable, since Mrs. Murphy testified that Mr. Kapenis never accepted the Home Federal terms as suitable.

We therefore conclude, based upon the circumstances and events surrounding the contract between the parties, that the term "suitable financing" meant financing terms that were acceptable to Mr. Kapenis. Mr. Kapenis entered the offer to purchase with the expectation that he would be able to obtain favorable financing. It is apparent from the conduct of the parties that the condition precedent, stating that the purchase was contingent upon Mr. Kapenis obtaining financing at an interest rate of no greater than 12¾%, was intended to benefit Mr. Kapenis. When Mr. Kapenis was unable to obtain favorable financing, the condition precedent did not occur, and the contract therefore was no longer valid.

REVERSED.