Dave FLORES and Greg Montoto, Plaintiffs-
Respondents,

v.

Jack RAZ and Margot Raz, Defendants-Third-
Party Plaintiffs-Appellants,†

v.

WISCONSIN STATE FAIR PARK, Third-Party
Defendant.

Court of Appeals

*No. 01–1104. Submitted on briefs November 6, 2001.—Decided
December 27, 2001.*

**2002 WI App 27**

(Also reported in 640 N.W.2d 159.)

† Petition to review denied 3-19-02.

306

On behalf of the defendants-third party plaintiffs-appellants, the cause was submitted on the briefs of *Joseph J. Welcenbach* and *Robert J. Welcenbach* of *Welcenbach & Widmann, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Coral D. Pleas* and *Daniel J. O'Brien* of *Schulz, Duffey & O'Brien, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J.   Jack Raz (Raz) and his wife,

Margot, appeal from the trial court's grant of summary judgment to Dave Flores and Greg Montoto. Raz argues that the trial court erred: (1) in determining that, despite the lack of an express clause in the business purchase agreement making the Wisconsin State Fair Park Board's (Board) approval of the sale a contingency, the Board's approval was an implied condition precedent subject to performance within a reasonable period of time; (2) in finding that the two-year delay in approving the sale constituted an unreasonable time period; and (3) in ruling that Flores and Montoto could recover the monies paid in contemplation of the sale under a claim for "unjust enrichment."

¶ 2.    Because the Board's approval of the sale was an implied condition precedent to the contract, subject to completion within a reasonable time, we affirm. Further, because the Board's failure to approve the sale for two years after the contract was executed was an unreasonable period of time under the circumstances, the buyers were entitled to rescind the contract and recoup their monies.

## I. BACKGROUND.

¶ 3.    The Razes own and operate Jack's West Side Deli, a business located on the Wisconsin State Fair Park grounds. Raz entered into a lease with the State Fair Park Board on May 27, 1977. Under the lease, Raz rents space from State Fair Park to use as a vendor during the State Fair week each year, but the buildings erected by Raz, as well as any fixtures of the business, remain his personal property. The lease also provides that Raz can sell the business, but only with the consent of the Board. This lease has been automatically renewed each year.

¶ 4. In August of 1998, Flores and Montoto approached Raz and asked if he would be interested in selling the equipment and buildings comprising the deli. Raz expressed interest and the parties met with Rich Bjorklund, the executive director of the Wisconsin State Fair, who indicated that he supported the sale. After this meeting, on August 13, 1998, the parties entered into a business purchase agreement. According to the agreement, Flores and Montoto would purchase all of the equipment and buildings comprising Jack's West Side Deli for $154,500; however, the business purchase agreement made no mention of the fact that the purchase was subject to the approval of the Board.

¶ 5. Pursuant to the terms of the purchase agreement, Flores and Montoto paid $2,000 earnest money at the execution of the agreement. They also paid Raz $28,000 at the end of August 1998, as a down payment. The balance of the purchase price was due on March 15, 1999. In March 1999, Flores and Montoto refused to pay the balance of the purchase price and requested the return of their monies because the State Fair Park Board had failed to grant approval of the sale. Ultimately, the Board did approve the sale on August 3, 2000, two years after the parties entered into the business purchase agreement.

¶ 6. However, on October 25, 1999, Flores and Montoto commenced an action to recover their $30,000. Raz counterclaimed for $124,500, the balance due on the purchase price. The trial court granted Flores' and Montoto's motion for summary judgment and dismissed Raz's counterclaim, concluding that the Board's approval of the sale was an implied condition precedent to the contract, and, because the condition had not been met within a reasonable time, the contract was unenforceable. The trial court then found that the elements

of a claim for unjust enrichment had been proved and awarded Flores and Montoto $30,000.

## II. ANALYSIS.

¶ 7. As noted, the trial court granted Flores' and Montoto's summary judgment motion, finding that Raz's retention of the $30,000 constituted "unjust enrichment." In an appeal from the entry of summary judgment, this court reviews the record *de novo,* applying the same standard and following the same methodology required of the trial court under WIS. STAT. § 802.08. *Voss v. City of Middleton*, 162 Wis. 2d 737, 747–48, 470 N.W.2d 625 (1991). After reviewing the record, we affirm the trial court's decision; however, we do so on other grounds.

¶ 8. Raz submits that the trial court erred when it failed to grant his summary judgment motion and, instead, granted the vendees' motion. Raz argues that because the Board ultimately gave him permission to sell his property located on the State Fair grounds and no contingency provision exists in the agreement hinging the sale on the Board's approval, he was entitled to summary judgment. We disagree.

¶ 9. While Raz correctly notes that the parties failed to include a clause conditioning the sale on Board approval, his subsequent argument misses the mark. Raz argues that his circumstances mirror those fact situations where the failure to include a financing contingency was found not to be a bar to enforcement of the contract. *See, e.g., Perkins v. Gosewehr*, 98 Wis. 2d 158, 295 N.W.2d 789 (Ct. App. 1980). Unlike *Perkins*, where the parties failed to include an adequate financial contingency, here, there is an absolute impediment to

the sale being consummated. Without Board approval, Raz could not legally sell his property. Therefore, Board approval, unlike the financing contingency in *Perkins*, operated as a bar to the sale of Raz's property.

¶ 10.   "Where an agreement contains no express provision as to some matter, the meaning in respect of such matter will be implied if an implication is warranted by the facts and circumstances of the particular case. . . ." 17A Am. Jur. 2d § 195 (1991). *See also Kelley v. Ellis*, 272 Wis. 333, 337, 75 N.W.2d 569 (1956) (citing 12 Am. Jur. *Contracts* § 64) ("Where an agreement contains no express provision as to some matter, the meaning in respect of such matter will be implied if an implication is warranted by the facts and circumstances of the particular case, as where a provision for performance in a reasonable time is sometimes implied."). Here, it is clear that everyone knew that Board approval was necessary. Indeed, the parties met with the executive director, who encouraged the sale. The facts and circumstances point to the parties' intention that Board approval would be necessary to complete the sale. Thus, the Board's approval was an implied condition precedent to enforcement of the contract.

¶ 11.   Further, the general rule is that where there is an absence of a provision as to the time for performance, a reasonable time is implied. Wis JI—Civil 3049 sets forth the rule:   "A contract which provides that it is to continue for an indefinite period continues for a reasonable time under the circumstances." *See also De Lap v. Inst. of Am., Inc.*, 31 Wis. 2d 507, 512, 143 N.W.2d 476 (1966) ("Where there is no provision as to the time for performance, reasonable time is implied."). Thus,

the implied condition that Board approval was needed was subject to a reasonable time limit.

■

¶ 12.   In determining what is a reasonable amount of time, the trial court can consider what is a "reasonable time under the circumstances." *See* WIS JI—CIVIL 3049. When we look to the circumstances surrounding the signing of the business purchase agreement, it is obvious that the parties assumed that Board action would occur before March 15, 1999. The parties had been assured by Bjorklund that Board approval would be forthcoming. Further, the contract was structured in a manner that strongly suggested that the parties intended to consummate the sale on March 15, 1999. The contract called for three separate payments:   the first payment was due at the time of the execution of the contract; the second payment, labeled a "down payment," was paid as required in August, 1998; and the final payment to complete the transaction was due on March 15, 1999. Common sense dictates that Flores and Montoto would not have agreed to pay Raz the entire purchase price without completing the sale and taking ownership. This conclusion is reinforced by another clause in the contract that stated that the sellers would be responsible for any liability incurred on the property up until March 15, 1999. The only reasonable reading of this clause is that Raz would not be responsible for any liabilities after March 15, 1999, because the property would then be owned by Flores and Montoto. Therefore, under the circumstances present here, a reasonable time period for the Board's approval would be a date after August 13, 1998, but before March 15, 1999.

¶ 13.   Raz points to case law in other states that have relieved the seller of his obligation to perform

when consent or cooperation of a third party was necessary. In *Foreman v. E. Caligari & Co.*, 130 S.E.2d 447 (Va. 1963), the court stated:

> The rule appears to be that if one undertakes unconditionally to perform an act which is not inherently impossible, but merely requires the acquiescence or consent of a third party, or the performance of a preceding act by the latter, the nonperformance is not ordinarily excused by the fact that it subsequently proves impossible for the promisor to comply with his contract, because of the refusal of the third party to give his consent or perform the act; in other words, the contract will not, merely from the fact that acquiescence in or performance of an act by a third party must precede compliance therewith, be construed as conditional upon such acquiescence or performance.

*Id.* at 452 (quoted source omitted). However, Wisconsin law stands opposed to such a broad conclusion. In *Oremus v. Wynhoff*, 20 Wis. 2d 635, 123 N.W.2d 441 (1963), the supreme court addressed a situation where an owner of property agreed to have a number of apartments rented before the sale of the property in question. *Id.* at 640. Although this agreement involved the performance of third parties, the court held that acceptance of the offer to purchase did not create a duty on behalf of the owner to rent the apartments in question, but merely gave the purchaser the right to refuse to go through with the deal if the vendor failed to have the apartments rented. *Id.* Similarly, Raz was not required to get the Board's approval, but Flores and Montoto could refuse to buy the property without it.

¶ 14. The present situation is further exacerbated by the fact that no date of performance was specified. As stated in *Schneider v. Warner*, 69 Wis. 2d 194, 230 N.W.2d 728 (1975):

> But what of a situation where no definite time for performance is fixed? Is one party obliged to wait indefinitely upon the other? We hold he is not. . . . This is because a contract for sale of land is one for simultaneous exchange of performance, the seller's conveyance of merchantable title, and the buyer's payment of the purchase price.

*Id.* at 199. How long were Flores and Montoto expected to wait? What if the Board refused to approve the sale after they had already paid Raz the balance of the purchase price? We conclude that they waited a reasonable time for the Board's approval before commencement of this action.

¶ 15. Finally, Wisconsin law permits rescission when an act has not occurred within a reasonable time. *Illges v. Congdon*, 248 Wis. 85, 95A, 20 N.W.2d 722 (1945) ("A breach of an express or implied condition going to the essence of the contract justifies its termination.") (citation omitted). Consequently, when the Board failed to act in a timely manner, Flores and Montoto were entitled to both terminate the contract and demand the return of their money. "If the vendor is unable to convey the required title at the time stipulated in the contract or implied by law, the vendee may ordinarily elect either to rescind and recover amounts paid on the contract, if the purchaser is ready, able, and willing to perform . . ." AM. JUR. 2D *Vendor and Purchaser* § 643 (1991). This remedy is also supported by

Wɪs JI—Cɪᴠɪʟ 3049, which states, in part: "A contract which is silent as to its time of duration may be terminated at any time by either party upon reasonable notification to the other party."

¶ 16. Thus, the trial court correctly ruled that Flores and Montoto were entitled to both rescind the contract when the Board had not approved the sale by March 15, 1999, and to recover the $30,000 they gave to Raz in contemplation of the sale. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

¶ 17. FINE, J. (*dissenting*). The majority recognizes that both parties—including, significantly, the buyers of the Raz property, Dave Flores and Greg Montoto—knew that:

- Flores and Montoto could not use the property they contracted to buy unless they had approval to do so by the State Fair Park Board; and

- The contract executed by Flores and Montoto did not condition consummation of the sale on approval by the State Fair Park Board by any date.

Additionally, the contract was drafted and typed by Montoto, with, as he testified, possible input from Flores. Yet, the majority, like the trial court, rewrites the contract to make the sale conditioned on approval of the State Fair Park Board on or before March 15, 1999. I respectfully dissent.

¶ 18. First, it is black-letter law that unambiguous contractual language must be enforced as it is written "even though the parties may have placed a different construction on it." *Cernohorsky v. Northern*

317

*Liquid Gas Co.*, 268 Wis. 586, 593, 68 N.W.2d 429, 433 (1955). Moreover, contracts are generally construed *against* those who drafted them, not in their favor. *Dairyland Equip. Leasing, Inc. v. Bohen*, 94 Wis. 2d 600, 609, 288 N.W.2d 852, 856 (1980). Nevertheless, the majority adds to the Montoto-Flores/Raz contract a provision that Montoto and Flores never sought to have included among its terms, and, presumably, a term for which they did not pay.

¶ 19.   Second, although terms can be implied in a contract in order to "accomplish substantial justice" irrespective of the parties' "original intentions," *Peterson v. Sinclair Ref. Co.*, 20 Wis. 2d 576, 581–582, 123 N.W.2d 479, 482–483 (1963) (contract to deliver fuel oil implies promise of safe delivery), implied terms should not be inserted by a court when that "does violence to the language of the agreement," *Oremus v. Wynhoff*, 20 Wis. 2d 635, 640, 123 N.W.2d 441, 444 (1963) (condition precedent to the sale of a small apartment building that three of the apartments be rented did not impose upon the seller a duty to rent the apartments). In my view, adding a term that neither party sought makes this court a *post-hoc* legal advisor.

¶ 20.   I am not persuaded that "substantial justice" requires that we re-draft the contract to say what, in retrospect, Flores and Montoto may now wish it had said when they wrote and signed it. The Board has approved the sale, and that should end the matter. Flores and Montoto wanted the Raz property, and Jack and Margot Raz wanted to sell it to Flores and Montoto. There is currently no impediment to enforcing the parties' agreement. I would reverse.