**REESE et, Plaintiffs, v. WALKER, Jr., Defendant.**

Cincinnati Municipal Court, Hamilton County.

No. 659304. Decided March 12, 1958.

584

Loyal S. Martin, for plaintiffs.
Aubrey M. Foiles, for defendant.

## OPINION

By BETTMAN, J.

Plaintiffs in the instant case were prospective buyers who made a written offer to purchase a certain parcel of real estate known as 815 Mann Place, Cincinnati, Ohio.

They brought suit against the real estate agent, Walker, for the return of their $1,000. earnest money deposit on the contract. Walker filed an interpleader, paid the $1,000. into Court, and was dismissed as party defendant.

The owner of the house, Posey, was made a new party defendant and filed an answer and cross petition, alleging damages for plaintiffs' failure to carry out their contract of purchase.

The contract, which was admitted in evidence, is a standard form real estate contract properly executed. The disposition of the case turns on the words "Contingent upon securing necessary financing," which were part of the typed portion of the contract.

The evidence showed that the offer which became the contract was procured by the agent, Walker, from plaintiffs. Walker delivered the offer to defendant Posey's real estate agent, McLeod. (Posey will be hereinafter referred to simply as defendant.) Defendant accepted the offer and executed the contract. Plaintiffs and defendant never saw each other nor did their agents ever discuss the meaning of the critical words "Contingent upon securing necessary financing."

Walker testified that as plaintiffs' agent he had gone to six or seven Building and Loan Associations in an attempt to borrow the funds necessary for plaintiffs to consummate the transaction; that plaintiffs wanted a fifteen year loan and were able to put 25% of the purchase price down; that plaintiffs wanted a "3/4%" loan and could not pay a "1%" loan.

A Mr. Berkemeyer, Secretary of the Home Federal Savings and Loan Association testified that plaintiffs had made application to his Association for a loan of $10,800. with interest at 6%, repayable over a fifteen year period; that two weeks later he had informed plaintiffs that the

Association would make a loan to them for the amount requested at 6.6% interest, repayable over a twelve year period and that plaintiffs had informed him that "they couldn't handle that type of loan."

The facts, then, are quite undisputed: that plaintiffs energetically attempted to secure a loan; that they were able to secure a commitment for the amount they felt they needed but not on terms they felt they could repay. There was no evidence that plaintiffs had changed their minds about the purchase nor that anything had prevented the closing of the transaction except that they were not able to secure a loan on terms they felt they could meet.

The first question that the Court must determine is whether the words in question render the contract so indefinite as to be void. For reasons which will hereinafter appear, the Court concludes that the contract can be interpreted to be a binding and enforceable obligation. The Court, in reaching this conclusion, bears in mind the legal presumption that the parties to a written contract intend that it should be an enforceable obligation.

Counsel agree that the words "Contingent upon securing necessary financing" constitute a condition precedent to proceeding under the terms of the contract. If the condition were met defendant would be entitled to damages for plaintiffs' refusal to proceed. If not, there would be a failure of condition and plaintiffs would be entitled to the return of their earnest money.

What, therefore, do the words "necessary financing" mean?

A search through West's Words & Phrases shows that the word "necessary" is used in many different situations. For example in statutes permitting public officials to expend funds "necessary" for public improvement; parental responsibility for a "necessary" furnished his child; "necessary" to carry out its objects, in a corporate charter; and in private contracts. The conclusion which one reaches after a reading of a number of these cases is that "necessary" is not a word with a clear-cut fixed meaning but one which varies in meaning, depending upon the situation in which it is used. As stated in Kay County Excise Board v. Atcheson, T. & S. F. Ry. Co., 185 Okla. 327, 91 Pac. 2d 1087:

"The word 'necessary' has no fixed meaning or character peculiar to itself. It is flexible and relative. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or. it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought, and is a relative and comparative term, depending upon its application to the object sought, the character of and reasons for the convenience as public or private * * *."

No case has been cited by counsel where the words "necessary financing" are used. Several have been found however using the word "necessary" as an adjective in private contracts.

In Carter v. Meyers, et al, Tex. Civ. App., 149 S. W. (2d) 248, plaintiff agreed to drill a well to a specified depth with eight-inch casing,

"unless excess water is encountered, making it necessary to set extra string of casing other than eight inch," in which event defendant was to bear the expense of additional casing. Defendant contended that, as a matter of law, smaller casing was not necessary since plaintiff driller could have dispensed with smaller casing by using an underreaming process. The Court held that, in view of the words of their contract, the parties must have contemplated a contingency requiring a smaller casing and that hence the necessity for a smaller casing was properly submitted to the jury. The Court said:

"* * * But we must also consider that the parties must have intended that the provision for casing other than the eight inch meant something. They must have contemplated some contingency which would require the smaller casing. * * *

"It is our duty to give effect to every provision of the contract if such can reasonaby be done."

In Scott et ux, v. Walden, 140 Tex. 31, 165 S. W. (2d) 449, the Court construed a grant of easement which provided: "* * * and it is agreed that the easement thus granted shall continue so long as the same may be necessary and required for ingress and egress to and from the garages and outbuildings."

The Court said:

"The language of the grant above clearly manifests that the parties intended that the easement should not be perpetual, but that upon the happening of some future contingency same should terminate. That language is not sufficiently specific to enable the court to determine, as a matter of law, by a construction thereof what future contingency was in the minds of the parties. Neither is it so meaningless as that it should be disregarded altogether."

One concludes, then, that the words "necessary financing," in the contract here in issue are to be interpreted by the application of the usual rules of contract construction. First, what were these words intended to mean by the parties—that is, what would one reasonably be lead to believe was intended by the words of the contract. Secondly, under the circumstances here before us what do the words mean in their plain, ordinary and popular sense?

In the Court's judgment the phrase "contingent upon securing necessary financing" would mean to a layman "If we can borrow the money we need to finance the purchase on terms we can repay." Defendant argues that plaintiffs were able to borrow the amount they needed and therefore did get "necessary financing." But "financing" in its ordinary meaning connotes more than simply the face amount of a loan. It includes the interest rate, the term, the rate of repayment and other terms and conditions. It means a loan on terms that the borrower can repay. Under the contract as executed only the buyers can determine what financing they need. Having signed the contract without specifying what financing was "necessary financing," the seller is in no position to complain if the buyers state they needed a loan with payments at a certain rate.

Of course, buyers must show good faith. They cannot defeat the

contract by their own fault. They must honestly determine what kind of a loan they need and must make a bona fide effort to obtain it. This, the evidence shows, is what plaintiffs did in the case now before us.

The condition precedent to consummation of the contract having been impossible of fulfillment, the contract is terminated and plaintiffs are entitled to a return of their earnest money deposit as prayed for. Entry may be presented accordingly.