KEBE, APPELLANT, *v.* NUTRO MACHINERY CORPORATION, APPELLEE.

---

(No. 49801 — Decided December 23, 1985.)

*Marshman, Snyder & Corrigan* and *William F. Snyder,* for appellant.

*Squire, Sanders & Dempsey, Jack Lynch* and *Nancy A. Shaw,* for appellee.

MARKUS, P.J. The plaintiff seller brought this damage action against the defendant buyer for the buyer's alleged breach of contract to purchase the seller's land. The buyer asserted that contractual conditions excused its performance, and it counterclaimed for its earnest money deposit which the seller had not returned.

The trial court granted the buyer summary judgment on both the seller's claim and the buyer's counterclaim, and the seller appeals. We hold that a genuine issue of material fact precludes summary judgment: whether the buyer made a good faith effort to satisfy those conditions.

### I

On October 6, 1981, the buyer contracted to purchase from the seller ten parcels of land along Mildred Avenue in Westlake. The following diagram depicts the area:

The parcels were between an overpass for Interstate 90 and Clemans Road, but they did not extend that entire distance. There were seven adjacent parcels on the west side of Mildred (lot Nos. 11-17) and three separated parcels on the east side (lot Nos. 18, 20 and 23).

The buyer planned to develop a larger plot. It included those ten parcels, intervening lots on the east side (lot Nos. 19, 21 and 22), and the street itself. The parties' contract expressed those expectations and related matters as conditions for their agreement:

"15. This contract is contingent upon the following conditions:

"a. The Buyer['s] being able to obtain a sanitary and storm sewer tie-in agreement with the City and Mr. Jack Cavano [the owner of nearby lot Nos. 55 and 56].

"b. The City['s] vacating Mildred Avenue between I-90 and Clemans Road and deeding the land to the Buyer.

"* * *

"d. Buyer['s] being able to purchase additional land as shown on Exhibit 'A' and noted as [lot Nos. 19, 21, and 22].

"* * *

"h. Closing to take place not before January 10, 1982 but not later than January 20, 1982. All documents and funds necessary for the completion of this transaction shall be deposited with the escrow agent no later than January 10, 1982."

The buyer deposited $1,000 in escrow, pursuant to the contract, which also provided:

"* * * [S]hould BUYER fail to carry out this agreement, except for the causes in Paragraphs 5, 9, and 15 hereof, SELLER in writing to BUYER may elect to declare a forfeiture and cancellation of this agreement, and upon such election being made all funds theretofore paid by BUYER shall be paid to, and retained by, SELLER as liquidated damages."

On November 19, 1981, the buyer wrote the seller that it would not complete the purchase because it could not satisfy some of the conditions:

"Since the date of acceptance, Nutro [the buyer] has been attempting to satisfy such conditions and has satisfied itself that it will be unable to obtain a storm sewer tie-in agreement (condi-

tion a.), arrange for the City to vacate Mildred Avenue between I-90 and Clemans Road (condition c. [*sic*]), and to purchase additional land on Exhibit 'A' to the agreement (condition d.). In the light of this situation, Nutro proposes that the Agreement be terminated and that upon return to Nutro of the $1,000 earnest money deposit, neither you nor Nutro will have further obligations under the Agreement to the other.''

The seller did not release the escrow funds to the buyer. On January 19, 1982, the seller requested the city to vacate the designated portion of Mildred Avenue. Following a hearing on March 19, 1982, the city vacated that portion of the roadway. The land previously occupied by the dedicated roadway then reverted to all abutting landowners pursuant to R.C. 723.08:

''The order of a legislative authority of a municipal corporation vacating or narrowing a street or alley which has been dedicated to public use by the proprietor thereof, shall, to the extent to which it is vacated or narrowed, operate as a revocation of the acceptance thereof by the legislative authority, but the right of way and easement therein of any lot owner shall not be impaired by such order.''

The seller subsequently obtained options to purchase intervening lot Nos. 19, 21, and 22, and then sold the disputed property to another purchaser. The new purchaser also obtained options for those intervening lots. Thereafter, the seller brought this action against the original buyer, claiming damages for the buyer's alleged breach of the original purchase agreement. The buyer counterclaimed for the return of its $1,000 earnest money payment.

## II

The seller's two assignments of error challenge the summary judgment order, arguing that the trial court misconstrued the contract conditions.

Though the court wrote no opinion, it apparently accepted the buyer's contention that condition ''b'' had not been and could not be satisfied. The buyer asserted that the city could not deed him the entire street area described in condition ''b,'' even if he otherwise performed the contract.

Even if he acquired lot Nos. 19, 21, and 22, he would not own all lots abutting the portion of Mildred Avenue described in the contract. He would still not own the lots on either side of Mildred Avenue between the purchased lots and Clemans Road (lot Nos. 55 and 56). Hence, that part of Mildred Avenue would necessarily revert to the persons who owned those remaining abutting lots. *Dayton* v. *Woodgeard* (1962), 116 Ohio App. 248, 255-258, 22 O.O. 2d 78, 82-83, 187 N.E. 2d 921, 926-927. Thus, the city could not legally transfer title to him for the portion of Mildred Avenue between I-90 and Clemans Road.

In effect, the buyer argues that the parties contracted for a legal impossibility, so it should be excused from performance. Ordinarily, the court construes contractual language as a matter of law. *Alexander* v. *Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 3 O.O. 3d 174, 359 N.E. 2d 702. In construing an agreement, the court should prefer a meaning which gives it vitality rather than a meaning which renders its performance illegal or impossible. *Cincinnati* v. *Cameron* (1878), 33 Ohio St. 336, 364; *State, ex rel. Gordon,* v. *Taylor* (1948), 149 Ohio St. 427, 37 O.O. 112, 79 N.E. 2d 127, paragraph two of the syllabus. The parties presumably intended to make an enforceable agreement, so the courts will ordinarily prefer an interpretation consistent with that purpose. Cf. 2 Restatement of the Law 2d, Contracts (1981) 92-93, 94, Section 203(a) and Comment *c.*

The disputed language conditions performance on (a) ''[t]he City['s] vacating Mildred Avenue between I-90

and Clemans Road," and (b) "deeding the land to the Buyer." The parties do not dispute the meaning of the first clause in this condition. They disagree about the street area which the city would transfer to the buyer to satisfy the second clause.

The buyer contends that "the land" refers to the entire street area which the city would vacate. The seller argues that "the land" refers to the area abutting property which the buyer would acquire — the seller's lots and the specified intervening lots. The buyer's construction renders the contract legally impossible, and the seller's construction does not. Therefore, proper rules for interpreting contracts require us to accept the seller's construction.

The buyer argues that the seller conceded the buyer's interpretation of the contract in the seller's deposition testimony:

"Q. Could you indicate for me, please, on Defendants exhibit 1 [a plat of the area], by making a circle in ink, what portion of Mildred Avenue is being discussed in condition b?

"A. [The seller] Vacation?

"Q. Yes.

"A. Entire portions, fronting on Clemans and coming all the way back to I-90, right in there [marking on the plat]."

This language and the marked plat are entirely consistent with the seller's position. The seller agrees that condition "b" involves the city's vacating that entire area. He disagrees about the area which the city will thereby transfer to the buyer.

Thus, the buyer did not show that the cited contract condition excused its performance as a matter of law. The buyer has the burden to show that it made good faith efforts to satisfy any contractual conditions which allegedly excuse its performance. It cannot defeat the contract by its own fault. *Reese* v. *Walker* (M.C. 1958), 77 Ohio Law Abs.

583, 586-587, 6 O.O. 2d 55, 57, 151 N.E. 2d 605, 608; cf. *John T. Shear Corp.* v. *Shiros, Inc.* (Oct. 3, 1985), Cuyahoga App. No. 49559, unreported.

When disputed, good faith efforts to satisfy contract conditions are factual issues. See *John T. Shear Corp., supra; Glickman* v. *Coakley* (Nov. 15, 1984), Cuyahoga App. No. 47997, unreported; *Indianapolis* v. *Domhoff & Joyce Co.* (1941), 69 Ohio App. 109, 119-120, 35 Ohio Law Abs. 232, 238-239, 23 O.O. 547, 552, 36 N.E. 2d 153, 159. The evidentiary materials offered to support the buyer's motion for summary judgment do not preclude an adverse finding on those factual issues. Therefore, summary judgment was not appropriate. Civ. R. 56(C).

We sustain the seller's two assignments of error, reverse the summary judgment entered in the buyer's favor, and remand the case for further proceedings.

*Judgment reversed and cause remanded.*

PATTON, J., concurs.

JACKSON, J., dissents.

JACKSON, J., dissenting. I respectfully dissent. One of the first principles of contract construction is that where the meaning of a contract is clear on its face, there is no need, or right, of construction. I am convinced that such is the case with the contract in the case at bar.

The Ohio Supreme Court stated in *Lawler* v. *Burt* (1857), 7 Ohio St. 341, 350:

" 'The first general maxim of interpretation' * * * is, that it is not allowable to interpret what has no need of interpretation. When a deed is worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which

such deed naturally presents. To go elsewhere in search of conjectures in order to restrict or extend it, is but an attempt to evade it."

The condition in the purchase agreement at issue clearly states:

"15. This contract is contingent upon the following conditions:

"* * *

"b. The City['s] vacating Mildred Avenue between I-90 and Clemans Road *and deeding the land* to the Buyer.* * *", (Emphasis added.)

The language of the provision is clear and unambiguous. The antecedent to which "the land" refers is expressly delineated: Mildred Avenue between I-90 and Clemans Road. There is no need to go outside the contract to determine what else the parties could have possibly meant when the language is clear.

It is true that when a contract provision is not clear and/or ambiguous, a liberal construction should be put upon instruments, if possible, to carry into effect the intent of the parties. *Germania Fire Ins. Co.* v. *Schild* (1903), 69 Ohio St. 136, 68 N.E. 706.

However, lacking such ambiguity in the contract before it, a court should not strain to breathe life into a contract rendered a nullity by a provision impossible of performance, such as condition 15.b. here.

Occasionally parties to a contract will agree to a contract provision which subsequently renders the contract a nullity. In those rare instances, such as the case here, the court must leave the parties as it found them.

To conclude, in view of the above, that the buyer must show good faith efforts to satisfy a contractual condition which is impossible of performance is, in my judgment, to require the doing of a vain act.

Therefore, I believe the summary judgment in favor of the buyer was appropriate and the judgment of the trial court should be affirmed.