Plaintiff-appellant, Equity Residential Development Corporation ("Equity"), appeals the decision of the Butler County Court of Common Pleas granting summary judgment to defendant-appellee, Planned Development Company ("PDC").
In June 1998, the parties entered into a contract ("Contract") for the sale of a fifty-four acre parcel ("Parcel 1") located in Union Township ("the Township"), Butler County, Ohio by PDC to Equity for $2.26 million. At the time of the Contract's execution, PDC was also negotiating for the sale of an adjoining parcel of land ("Parcel 2") to Tipton Interests, Inc. ("Tipton"). Tipton was planning a land swap ("Swap Agreement") with the Township by which Tipton would exchange Parcel 2 for the Township's McGinnis Park.
PDC and Equity negotiated a rebate provision in the Contract as to the Parcel 2 sale. This contingent rebate clause was included in Section 2(d):
 Subject to the provisions of § 3(a), in the event the transaction for the sale and purchase of Parcel 1 is Closed as provided in this [Contract] and:
 (i) the Township (or its designee) closes on the purchase and sale of Parcel 2 on or before September 30, 1999 as a result of and in furtherance of a contract for such transaction voluntarily entered into by Seller or as a result of the threat of the exercise of eminent domain by the Township (the "Township Closing"), Seller shall, simultaneous with the Township Closing, rebate to Buyer a portion of the Purchase Price for Parcel 1 in the amount of $393,854 (the "Rebate");
* * *
 Except as provided above, Seller shall have no obligation to pay to Buyer the Rebate or any other sum. Further, Seller shall have no obligation to hold the Rebate in trust or in a separate account nor shall Seller be required to pay any interest on the Rebate, if applicable.
 The Contract contained a merger clause, Section 14(b), and a clause providing that the terms of the Contract survive the Parcel 1 closing. Section 14(e).
The Parcel 2 transaction was made up of two deals. In the first transaction, PDC would sell Parcel 2 to Tipton ("Tipton Agreement"). The Tipton Agreement was signed on October 19, 1998, with a closing date of March 1, 1999. The second transaction was the Swap Agreement between Tipton and the Township. Under the Tipton Agreement, Tipton could assign its rights, but it had to first give PDC notice of the assignment.
Tipton and the Township became involved in a dispute over zoning issues related to McGinnis Park. On February 5, 1999, Tipton gave notice that it would no longer be involved in the land swap. At that time, the Township sought a land swap with PDC directly. PDC's representative, Kenneth R. Campbell, requested an extension of the Parcel 2 closing so that PDC could review the proposed land swap. The Township agreed. Tipton and the Township executed an assignment of rights to be effective March 1, 1999, the date of the Tipton Agreement's closing. On April 30, 1999, Campbell informed the Township that PDC was not interested in the land swap because Parcel 2 was worth substantially more than the price offered in the Tipton Agreement.
On May 25, 1999, the Township filed suit against PDC seeking specific performance of the Tipton Agreement and compensatory damages. Equity sought leave to intervene which was granted. On September 23, 1999, Equity filed a complaint against PDC alleging that PDC breached the Contract's contingent rebate clause by failing to make good faith efforts to complete the Tipton Agreement before September 30, 1999. Equity's complaint included claims for breach of contract, promissory estoppel, declaratory judgment, and a third-party beneficiary claim. PDC and the Township filed motions for summary judgment. On March 22, 2000, CPDC and Union Township settled and filed an agreed stipulation of dismissal, and title of Parcel 2 was transferred to the Township.
The trial court granted PDC's motion for summary judgment against Equity. The trial court first found that the Contract was detailed and "appears to be the product of significant negotiations between two sophisticated real estate developers." The trial court found that Equity's claims were all based upon "the assertion that PDC breached an implied duty of good faith in not closing with [the Township] within the requisite time." The trial court reviewed relevant case law and determined that
 Ohio does recognize a duty of good faith in every contract. However, this duty is narrow and is limited to preventing parties from taking opportunistic advantage in a way that was not contemplated at the time the contract was drafted. Therefore, in order for Equity to prevail in its claim of bad faith against PDC, it must prove that the possibility that PDC and [the Township] would not reach an agreement within the requisite time was not contemplated at the time of the contract.
 Looking to other provisions of the Contract, the trial court concluded that the parties contemplated that PDC might not sell Parcel 2 to the Township, and that it could not be said that PDC had taken opportunistic advantage of Equity.
The trial court addressed Equity's argument that contingency clauses in a contract imposed an obligation of good faith in their performance. The trial court found there was such a duty only where "it was necessary to impose a duty of good faith in order to give meaning to the contract as a whole." The issue in such cases was only "whether a party has exercised reasonable efforts in completing a task which is the basis of the entire bargain." The trial court determined that even without an implied duty of good faith in the contingent rebate clause, the Contract could still be given business efficacy. Equity's third-party complaint was dismissed. Equity appeals.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S BREACH OF CONTRACT CLAIM BECAUSE GENUINE ISSUES AS TO MATERIAL FACTS EXISTED AS TO WHETHER DEFENDANT-APPELLEE EXERCISED GOOD FAITH EFFORTS TO FULFILL THE CONTINGENT CLAUSE IN THE CONTRACT.
 Equity contends that the contingent rebate clause in the Contract contained an implied good faith obligation to fulfill the contingency. Equity argues that PDC breached this obligation by intentionally sabotaging the sale of Parcel 2 to the Township until after September 30, 1999.
We first note that there is substantial dispute over the actions and intentions of PDC's representatives beginning in February 1999. The trial court did not address these factual disputes. Rather, the trial court decided only legal issues regarding interpretation of the Contract, and we are thus concerned only with interpreting the Contract.
Pursuant to Civ.R. 56(C), the trial court may grant summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Welco Industries, Inc.v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Co. (1998),82 Ohio St.3d 482, 485. In determining whether the plaintiff demonstrated the elements of his claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Beardsleyv. Manfredi Motor Transit Co. (1994), 97 Ohio App.3d 768, 769.
The interpretation of a written agreement is a matter of law for the court. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. The paramount objective in construing a written agreement is to ascertain the parties' intent. Aultman Hosp. v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. The agreement must be given a just and reasonable construction which carries out the parties' intent as evidenced in the contractual language. Skivolocki v.East Ohio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. The parties' intent is presumed to reside solely within the language employed in the agreement. Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus.
If a contract is clear and unambiguous, the court looks only to the plain language of the agreement to determine the parties' rights and obligations; the court only gives effect to the agreement's express terms. Uebelacker v. Cincom Systems, Inc. (1988), 48 Ohio App.3d 268,271, citing Seringetti Constr. Co. v. Cincinnati (1988), 51 Ohio App.3d 1,4. The court may not formulate a new contract for the parties. AultmanHosp., 46 Ohio St.3d at 54-55. A contract does not become ambiguous because its operation may work a hardship upon one party. Ohio Crane Co.v. Hicks (1924), 110 Ohio St. 168, 172.
The obligation of good faith has been described as:
 Although courts often refer to the obligation of good faith that exists in every contractual relation, * * * this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. "Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.
Ed Shory Sons, Inc. v. Soc. Natl. Bank (1996), 75 Ohio St.3d 433,443-444. In Ohio, not every contract is subject to an implied obligation of good faith and fair dealing. Sammarco v. Anthem Ins. Cos., Inc.
(1998), 131 Ohio App.3d 544, 554-555. An obligation to use good faith in performing a contract is imposed only under limited circumstances. For example, where a contract is silent as to an issue, the parties are required to use good faith in filling the gap in the contract. BurlingtonResources Oil Gas Co. v. Cox (1999), 133 Ohio App.3d 543, 547. An obligation of good faith is imposed as between an insurer and its insured, as well as in certain commercial contracts governed by Ohio's Uniform Commercial Code, R.C. Chapter 1305. Sammarco,131 Ohio App.3d at 555. Where a matter is specifically covered by the written terms of a contract, there are no implied promises in relation to that matter.Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999),86 Ohio St.3d 270, 274, motion for reconsideration denied,87 Ohio St.3d 1421, citing Kachelmacher v. Laird (1915), 92 Ohio St. 324, paragraph one of the syllabus; McClorey v. Hamilton Cty. Bd. of Elections
(1998), 130 Ohio App.3d 621, 626; Jost v. Burr (1990), 69 Ohio App.3d 354,359. An obligation of good faith arises only where a matter was not resolved explicitly by the parties. Ed Shory, 75 Ohio St.3d at 444.
The provision at issue, Section 2(d), contains a condition precedent within its terms, the sale of Parcel 2 by September 30, 1999. A condition precedent is an occurrence that must take place before any obligations become effective. Troha v. Troha (1995), 105 Ohio App.3d 327, 334, citingMumaw v. W. S. Life Ins. Co. (1917), 97 Ohio St. 1, 9. A condition precedent requires "that an act must take place before a duty of performance of a promise arises. If the condition is not fulfilled, the parties are excused from performing." Troha, 105 Ohio App.3d at 334
(citation omitted).
The effect of Section 2(d) is that if, and only if, PDC sold Parcel 2 by September 30, 1999 would Equity be entitled to the rebate. The trial court correctly determined that Equity was required to prove that PDC took opportunistic advantage of Equity if a good faith duty existed. This required proof that PDC undertook actions to make real a possibility that the parties did not contemplate at the time of the Contract's making. Equity failed to make such a showing. It was contemplated by the parties that PDC might not sell Parcel 2 at all, and Section 2(d) of the Contract explicitly governs the contingent rebate.
As found by the trial court, the parties clearly contemplated the possibility that PDC would not sell Parcel 2. The parties included a "Put Agreement" in the Contract in Section 8(b):
 As depicted on the Site Plan, there is an approximate ___ ± acre tract of land located south of and contiguous to Parcel 1 (the "Put Tract) [Parcel 2]. Seller desires to reserve the right and option, exercised in Seller's sole discretion, to "put" the Put Tract to Buyer at any time after closing and prior to December 31, 2002 for a purchase price equal to $675,000 and upon such other terms and conditions as may be mutually acceptable to Buyer and Seller. Accordingly, and by not later than June 22, 1998, Buyer and Seller shall negotiate in good faith to establish the express terms and conditions applicable to the right of Seller to sell, and the obligation of Buyer (or its successors and assigns) to purchase the Put Tract (the "Put Agreement").
The trial court correctly interpreted the effect of this provision:
 This clause recognizes the possibility that PDC may not reach an agreement with [the Township] with regards to Parcel 2. In fact, this clause only has meaning in the event that PDC still owned the property and had not sold it to [the Township by December 31, 2002]. As such, reasonable minds could only come to the conclusion that, at the time the parties entered into the contract, they had contemplated and recognized the possibility that PDC might not sell Parcel 2 to [the Township].
 Thus, at the time of the Contract's making, it was already recognized that PDC might not complete the Tipton Agreement by September 30, 1999, if at all. This fact alone makes tenuous Equity's contention that PDC took opportunistic advantage of it.
Equity's contention becomes less persuasive in the face of the text of Section 2(d) of the Contract. That section explicitly governs the contingent rebate. This alone would compel the conclusion that no implied obligation of good faith is applicable. Ed Shory, 75 Ohio St.3d at 444. By its very terms, Section 2(d) is not conditioned upon PDC's motivations to sell or not sell Parcel 2. It is only conditioned upon the possibility that Parcel 2 may be sold.
Had Equity sought to ensure that PDC would complete, or even attempt to complete, the sale of Parcel 2, Equity needed to only have included in Section 2(d) an explicit obligation that PDC sell or attempt to sell Parcel 2. Where Equity was concerned with good faith dealings, it had such language included in the Contract, as was done in Section 8(b): "Buyer and Seller shall negotiate in good faith[.]" As a result, it cannot be said that the parties intended that Section 2(d) include an obligation of good faith not expressly included in that provision.
The text of Section 2(d) expressly relieves PDC of liability:
 Except as provided above, Seller shall have no obligation to pay to Buyer the Rebate or any other sum.
 By its very terms, Section 2(d) limits PDC's obligations, and hence its liability, to the explicit terms of that section. The circumstances upon which PDC was obligated to pay the rebate were governed only by the fact of the possible sale. If that sale did not become an eventuality, for whatever reason, the section relieved PDC of the obligation to pay the rebate.
Nonetheless, Equity requests that this court expand the impact of cases which imposed an implied duty of good faith upon a contract. But as thoroughly discussed by the trial court, the cases upon which Equity relies are readily distinguishable. In Illinois Controls v. Landham
(1994), 70 Ohio St.3d 517, motion for reconsideration denied,71 Ohio St. 1414, Kebe v. Nutro Machinery Corp. (1985), 30 Ohio App.3d 175, and Clark v. Hartley (1982), 7 Ohio App.3d 147, the courts imposed obligations of good faith, but only because such was necessary to give efficacy to the contracts as a whole. In those cases, the duty went to the very basis of the contracts, not to ancillary agreements which are conditioned upon events not essential to the primary agreement. IllinoisControl concerned an exclusivity contract, which by its nature requires the selling party to make reasonable efforts to market and sell the product. 70 Ohio St.3d at 519-520. Kebe and Clark both concerned land sales in which the buyer had to meet certain conditions before the sale could take place. None of these cases are applicable here, where the contingent rebate provision is not the basis of the Contract. Kebe,30 Ohio App.3d at 177-178; Clark, 7 Ohio App. 3d at 150.
Before this court, Equity asserts that Galmish v. Cicchini (2000),90 Ohio St.3d 22, requires the imposition of an implied duty to deal in good faith. Equity is mistaken. Galmish concerned a contract with a clause similar to the instant clause. In that case, the land sale contract included a provision that if Cicchini, the buyer, sold the property to a third party within a year's time, Galmish, the seller, would be given one half of the proceeds of that second sale. It was alleged that, at the time the contract was executed, Cicchini intended to not complete the future sale within the one year time limit. Cicchini sold the land to a third party, but in such a way that it appeared that the sale took place after the one year limit.
Galmish did not concern whether there was an implied duty to act in good faith in the contingent clause. Instead, that case concerned whether parol evidence could be used to prove Cicchini's initial intention to never fulfill the contract. Unlike in the instant case, Galmish alleged and provided evidence that when executing the contract, Cicchini concealed his intent to thwart the very purposes of the contingent provision. In the instant case, Equity alleges that months after the Contract's execution, PDC decided to put off the sale of Parcel 2. Unlike the instant case, Cicchini's alleged conduct supported the argument that he committed an active fraud at the time the contract was made.
Equity's reliance on Galmish is based upon part of one paragraph:
 While some of the evidence presented by Galmish involves statements made by Cicchini prior to the execution of the writing, * * * these statements were not proffered for the purpose of proving a parol agreement. Instead, they were offered as part of the surrounding circumstances leading up to the finalized written agreement to show that Cicchini intended from the outset to prevent the fulfillment of the condition that would invoke his contractual promise to share the excess proceeds. Quite simply, Galmish does not rely on parol evidence to fulfill the condition precedent to Cicchini's liability, but on the promise implied in the writing that Cicchini would not connive to prevent it.
90 Ohio St.3d at 31. This excerpt supports the fact that Galmish is distinguishable. The parol evidence was used to prove that Cicchini entered into the contract with the intention of never fulfilling the contract. As noted above, this would serve as a basis for a fraud claim.Galmish thus recognizes that the very purpose of entering into a contract would be frustrated if the parties were allowed to never harbor a contractual intention or to conceal their wrongful intentions.
Galmish makes further sense when one considers that parties must enter into a contract in good faith, as the good faith obligation at that point concerns the validity of the contract itself. This is all that is ensured by allowing parol evidence to establish the circumstances of the contract's making, as was done in Galmish. But after the contract's making, the good faith obligation is imposed upon performance of the contract only where such an obligation is essential to the continued vitality of the contract, as in Illinois Control, Kebe, and Clark.
Such reasoning is the more compelling where the parties to the contract are sophisticated businessmen. Requiring that the contract is entered into in good faith goes to the very essence of the contract's inception. This accords with Galmish. Good faith is required where performance goes to the very essence of the contract, as in Illinois Control, Kebe, andClark. Where performance does not affect the purpose of the contract, performance is governed not by implied good faith obligations, but by only the express terms of the contract, as those are the written reflection of parties' negotiated agreements. To impose obligations not included in the contract under such circumstances would be to mandate requirements of performance for which the parties did not bargain. Thus limiting any good faith obligations accords with Ed Shory's rule that where the contract explicitly addresses a subject, no implied obligations may be imposed.
The above limited application of implied good faith duties serves important contractual purposes. Where a party wishes to impose specific obligations upon the other contracting party on a matter not central to the contract, those obligations must be bargained for and included in the contract. This encourages parties to fully negotiate their deal and to explicitly include in the contract the results of their negotiations. This also prevents courts from having to flounder through unexpressed intentions in a vain attempt to discern the true agreement of the parties. To impose such a duty upon courts would thwart the very purposes of objective contractual interpretation.
Returning to the instant case, the trial court correctly concluded that the contingent rebate clause does not contain a good faith obligation and that PDC did not take opportunistic advantage of Equity. The contingent rebate was an ancillary issue in the contract, not central to the sale of Parcel 1. As expressed in Section 8(b), the "put" provision, the parties anticipated that PDC might not sell Parcel 2 to the Township. Section 2(d), the contingent rebate clause, was conditioned upon the final sale of Parcel 2 to the Township, not PDC's intentions to sell or not sell Parcel 2. Thus, under the Contract, PDC could have decided not to sell Parcel 2, and Equity would have had no recourse for this decision.
Equity now asks this court to create a remedy for its failure to negotiate better terms for itself in Section 2(d). Equity asks this court to read into Section 2(d) a good faith obligation it chose not to pursue. But it is clear that Equity was fully aware that it could negotiate for PDC to accept such an obligation. It happened in Section 8(b). Where the parties are sophisticated parties who engaged in extensive negotiations, where the contract expressly addresses specific issues, and where the contested provisions are not central to the existence of the contract or to performance of the purposes of the contract, a court may not read into the contract terms which the parties have not included. The trial court properly adhered to this rule.
We find that Section 2(d) of the Contract, the contingent rebate clause, does not contain an implied good faith obligation to consummate sale of Parcel 2. The trial court properly granted summary judgment as to this issue. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S PROMISSORY ESTOPPEL CLAIM BECAUSE THE TRIAL FAILED TO EVEN ADDRESS THE PROMISSORY ESTOPPEL CLAIM IN ITS DECISION.
Equity contends that the trial court failed to resolve its promissory estoppel claim when granting summary judgment to PDC. Equity argues that genuine issues of fact existed as to whether PDC made assurance to Equity regarding the sale of Parcel 2 to induce Equity to enter into the Contract.
We first address the contention that the trial court failed to address Equity's promissory estoppel claim. In its entry, the trial court stated:
 Equity sets forth several counts [in its complaint] including breach of contract, promissory estoppel, declaratory judgment, and a third party beneficiary claim. At the heart of each of these claims is the assertion that PDC breached an implied duty of good faith in not closing with [the Township] within the requisite time.
The trial court then addressed whether there was an implied duty of good faith in the transaction. The trial court concluded there was no such duty and dismissed Equity's complaint. The trial court did address Equity's promissory estoppel claim. Any allegation to the contrary is without merit.
Equity argues that the affidavit of Robert Lowe, an Equity shareholder and officer, created genuine issues of fact as to whether PDC induced Equity to enter into the Contract through assurances that the sale of Parcel 2 was a "done deal." Lowe's affidavit states that such assurances were given both before and after the Contract was executed. Nothing in the affidavit would show that prior to Tipton's decision to forego the Parcel 2 sale, PDC intended to not consummate the sale of Parcel 2. It appears that at the time that the Contract was executed, the Parcel 2 sale was expected to be completed.
Equity alleges that it entered into the Contract only because PDC made assurances that Parcel 2 would sell before September 30, 1999, thus entitling Equity to the rebate. Equity seeks to use these alleged assurances to impose upon PDC a duty to sell Parcel 2 by September 30, 1999. As noted above, the Contract, as the governing instrument, includes no such requirement. Thus, Equity seeks to use Lowe's affidavit to introduce parol evidence in an attempt to vary the terms of the Contract. This Equity cannot do. Galmish, 90 Ohio St.3d at 27; Ed Shory,75 Ohio St.3d at 440. In the face of an extensive, conclusive written agreement on the same subject, Equity cannot maintain a promissory estoppel claim, especially where it is based upon alleged representations not included in the written instrument. "[T]he parol evidence rule may not be avoided by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing." Galmish,90 Ohio St.3d at 29; Ed Shory, 75 Ohio St.3d at 440; Marion Prod. Credit Assn. v. Cochran
(1988), 40 Ohio St.3d 265, paragraph three of the syllabus; Bollinger,Inc. v. Mayerson (1996), 116 Ohio App.3d 702, 712-713, discretionary appeal not allowed (1997), 78 Ohio St.3d 1467. As aptly stated by Chief Justice Taft:
 A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth merely by looking when he signed. * * * If this were permitted, contracts would not be worth the paper on which they were written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs.
Dice v. Akron, Canton, Youngstown RR. Co. (1951), 155 Ohio St. 185,191, reversed on other grounds (1952), 342 U.S. 359, 72 S.Ct. 312.
The trial court addressed the argument underlying Equity's promissory estoppel claim. The trial court properly granted summary judgment as to the claim. The second assignment of error is overruled.
 ____________________________ YOUNG, J.
POWELL, P.J., and VALEN, J., concur.