DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, David DeAngelo and Therese DeAngelo, appeal the entry of summary judgment against them in the Cuyahoga Falls Municipal Court. We reverse.
On December 31, 1997, June Harvey, an employee of Cutler Associates, Incorporated ("Cutler"), appellee, first met David and Therese DeAngelo while showing a home located at 2903 Saxe Road in Mogadore, Ohio. The DeAngelos were interested in purchasing the Saxe Road property and, on January 14, 1998, Ms. Harvey met with them in their home to execute an offer on that property. They also executed a disclosure agreement indicating that Ms. Harvey was representing both them and the sellers in the transaction. The sellers of the Saxe Road property accepted the offer on January 15, 1998. The contract of sale was contingent on the DeAngelo's sale of their current residence at 1431 Falls Avenue in Cuyahoga Falls, Ohio.
Ms. Harvey and the DeAngelos entered into a listing agreement for the DeAngelo's Falls Avenue property on January 26, 1998. The listing agreement commenced February 2, 1998 and ran through May 9, 1998. It provided for a seven percent commission to be paid in the event that Ms. Harvey submitted to the DeAngelos the offer of a "ready, willing and able purchaser during the term" of the listing agreement for the agreed-upon amount. In a handwritten addition on the face of the contract, the listing agreement was made expressly "subject to sellers purchasing 2903 Saxe Rd. Mogadore, OH[.]"
Ms. Harvey produced a buyer in February or March 1998, Tara Vojtkofsky — Ms. Harvey's daughter. Ms. Vojtkofsky offered to purchase the Falls Avenue property for the full asking price. On March 5, 1998, the DeAngelos and Ms. Vojtkofsky signed a purchase agreement and also executed a dual agency disclosure agreement, as Ms. Harvey was representing both parties to the transaction.
In the meantime, the DeAngelos were attempting to obtain financing on the Saxe Road property. Initially, they contacted Freedom Mortgage Corporation, which informed them that they would have to pay an additional eight thousand dollar down payment. The DeAngelos were unable and unwilling to pay this additional sum and informed Ms. Harvey that they would not be able to purchase the Saxe Road property, and hence, would not be selling the Falls Avenue property. Ms. Harvey recommended that the DeAngelos contact Mr. Harbersack of Castle Mortgage Corporation, as she felt that he could obtain more reasonable financing. However, Mr. Harbersack also requested an additional eight thousand dollar down payment. The DeAngelos refused to complete either the purchase of the Saxe Road property or the sale of the Falls Avenue property.
The DeAngelos forfeited their five hundred dollar payment of earnest money to the seller of the Saxe Road property and received a release from the owner of that property on the sale contract. Ms. Harvey also signed a release as to the purchase of the Saxe Road property. Ms. Vojtkofsky and the DeAngelos also executed a release of the purchase contract regarding the Falls Avenue property.
On September 9, 1998, Cutler filed suit against the DeAngelos seeking damages on the listing agreement for the Falls Avenue property. On November 19, 1998, the DeAngelos responded and counterclaimed, alleging that Ms. Harvey breached the duty she owed to them due to the conflict of interest inherent in representing them as sellers and her own daughter as buyer of the Falls Avenue property. Cutler moved for summary judgment on April 22, 1999, the DeAngelos responded in opposition, and Cutler filed a reply brief to their response. On July 30, 1999, the trial court entered summary judgment on Cutler's claim against the DeAngelos. On June 12, 2000, the trial court filed a nunc pro tunc entry, amending the trial court's July 30, 1999 order to dismiss the DeAngelos' counterclaim.[1]
This appeal followed.
The DeAngelos assert one assignment of error:
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT[.]
 The DeAngelos assert that the trial court erred in granting summary judgment in favor of Cutler because of Ms. Harvey's conflict of interest regarding the transaction. Further, they aver that, as the condition — the purchase of the Saxe Road property — added to the listing agreement never came to fruition, the DeAngelos' obligation to pay never matured under the contract. As we agree that a genuine issue of material fact remains as to the latter argument, we reverse the entry of summary judgment and remand the cause to the trial court.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992),80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists.Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
"In interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning."Carroll Weir Funeral Home, Inc. v. Miller (1965), 2 Ohio St.2d 189, 192. It is equally well settled that "[c]ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." Skivolocki v. E. Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus. "Where there is a conflict between any of the printed provisions of a contract and those inserted in writing at the time the contract is executed the latter will control." Farmers Natl. Bank v. Delaware Ins. Co. (1911), 83 Ohio St. 309, paragraph one of the syllabus.
When a party's obligation to perform is contingent on a condition of which that party controls the fulfillment, the party "has the burden to show that it made good faith efforts to satisfy [the] contractual conditions which allegedly excuse its performance. When disputed, good faith efforts to satisfy contract conditions are factual issues." Kebev. Nutro Mach. Corp. (1985), 30 Ohio App.3d 175, 175. Moreover, one cannot "take advantage of a contingency which was not fulfilled as a means of excusing [one's] performance when [one has] clearly made no attempt to satisfy the condition." DeSantis v. Soller (1990),70 Ohio App.3d 226, 236.
The listing agreement herein stated, in pertinent part:
 3. Owner Also Consents. In the event of a sale or exchange of the property Owner agrees to:
 (a) Furnish a title policy, showing good and marketable title to said property and convey title with full covenants or warranty and release of dower.
 (b) Convey a marketable title by good and sufficient Deed of General Warranty or Fiduciary Deed if that is my capacity with all dower rights released.
 This listing is subject to sellers purchasing 2903 Saxe Rd. Mogadore, OH[.]
(Handwritten portion italicized.)
The DeAngelos submitted affidavits averring that they had made a good faith effort to obtain financing and thereby purchase the Saxe Road property. They stated that they were unable to obtain suitable financing due to the demand by both the financing company they originally contacted and the financing company recommended by Ms. Harvey that they pay an additional down payment of eight thousand dollars. They state that they were both unable and unwilling to make such an additional expenditure. The DeAngelos' affidavits must be construed in a light most strongly in favor of the DeAngelos. Hence, we find that there exists a material issue of fact as to whether the DeAngelos made a good faith effort to fulfill the handwritten addition to the listing agreement.[2] Accordingly, we conclude that the trial court erred in granting summary judgment in Cutler's favor, as, had the DeAngelos made such a good faith effort to purchase the Saxe Road property, the condition would be valid and operate to relieve the DeAngelos of their obligations under the contract, as the handwritten portions of a contract control.
The DeAngelos' assignment of error is sustained.[3] The judgment of the Cuyahoga Falls Municipal Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Cuyahoga Falls Municipal Court, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
CARR, J., WHITMORE, J., CONCUR.
[1] We do not pass on the propriety of the nunc pro tunc entry as the issue is not raised herein.
[2] We note that, while the handwritten term herein appears to have broad application, Ms. Harvey clearly was aware of and negotiated that term as it was a handwritten addition to the listing contract and favors the DeAngelos. Had Ms. Harvey wished to limit the scope of the condition, she could have negotiated to do so or simply refused the addition of the condition.
[3] The issue of Ms. Harvey's alleged bad faith in failing to inform the DeAngelos that the commission on the listing contract was still due is conditioned on the existence of such an obligation to pay by the DeAngelos. As we conclude that a material issue of fact remains as to whether the DeAngelos were indeed obligated to pay the commission on the listing agreement, we do not reach the issue of whether Ms. Harvey breached her duty, if any, to the DeAngelos by not informing them of their continued obligation to pay Cutler the commission because such an obligation may not exist.